**In re AKF FOODS, INC., Debtor.**

**Bankruptcy No. 183–31951–21.**

United States Bankruptcy Court,
E.D. New York.

Jan. 6, 1984.

Parker, Chapin, Flattau & Klimpl, New York City, for debtor-in-possession.

Verrill & Dana, P. Benjamin Zuckerman, Portland, Me., for Creditor's Committee.

CECELIA H. GOETZ, Bankruptcy Judge:

The issue for decision is whether the Bankruptcy Court having appointed a com-

mittee of unsecured creditors may enlarge that committee, notwithstanding that such enlargement is unnecessary to ensure adequate representation of creditors.

The members of the committee of unsecured creditors appointed by this Court, pursuant to 11 U.S.C. § 1102(a) and § 1102(b), have moved this Court to enlarge the membership of the committee to include several creditors who expressed an interest at the Section 341 meeting in serving on the committee. The debtor opposes this enlargement as beyond the power of the Court since there is no claim that the present membership of the committee "is not representative of the different kinds of claims or interests to be served." 11 U.S.C. § 1102(c). The debtor's position is that the Court exhausted its authority with respect to the composition of the creditors' committee when it appointed the original committee pursuant to § 1102(a)(1) and may only change the membership thereafter "(o)n request of a party in interest and after notice and a hearing ... if the membership is not representative." [1]

It has been the experience of this Court that some members of a creditors' committee originally appointed may be too remote geographically to render useful service; that large creditors entitled to serve may fail of appointment because of errors in the debtor's schedules; and that at the same time there may be creditors willing and eager to serve. In such situations, this Court has routinely added members as circumstances dictated.

In the pilot districts where the United States trustees are functioning, the appointment of a creditors' committee is the responsibility of the United States trustee, not the bankruptcy judge. 11 U.S.C. § 151102. Subparagraphs (a) and (b) of § 151102 replace subparagraphs (a)(1) and (a)(2) of § 1102, but leave unaffected subparagraph (b) dealing with the composition of a creditors' committee and subparagraph (c) dealing with the changes by bankruptcy court in the membership or size of a committee, if it turns out not to be representative.

Judging by the decision of Bankruptcy Judge Galgay in *Matter of Hadar Leasing International Co., Inc.,* 11 B.R. 460 (Bkrtcy. S.D.N.Y.1981) the United States trustees where they do the appointing show the same flexibility in adding creditors to the committee originally appointed as do the judges in this district.

The debtor contends, however, that unlike the United States trustee the bankruptcy court lacks the power to alter the membership of a committee except where it proves to be not representative.[2]

To put the debtor's contentions into context some background is desirable. The function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents. The sig-

---

1. The relevant provisions read:
   § 1102. Creditors' and equity security holders' committees.
   (a)(1) As soon as practicable after the order for relief under this chapter, the court shall appoint a committee of creditors holding unsecured claims.
   (b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee.
   (c) On request of a party in interest and after notice and of hearing, the court may change the membership of the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

2. The statutory provision respecting United States trustees, paralleling § 1102(a)(1) is:
   § 151102 Creditor's and equity security holder's committees.
   (a) As soon as practicable after the order for relief under Chapter 11 of this title, the United States trustees shall appoint a committee of creditors holding unsecured claims.
   § 151102(b) is identical with § 1102(a)(2) which is not involved here and which authorizes the appointment of additional committees of creditors or of equity security holders.
   § 1102(b) and § 1102(c) are not replaced by anything in the provisions applicable to the pilot districts and, therefore, apply in those districts just as they do in the non-pilot districts.

nificance of the role they play is well put in an observation quoted in the report of the Commission on the Bankruptcy Laws of the United States whose work led to the present Code. Explaining the section in the Commission's proposed bill, Section 7–101, which ultimately became Section 1102, the Report notes: "Adequate, independent representation of creditors is especially important in a case where a disinterested trustee is not appointed. 'Without the countervailing position of a creditors' committee... [a case where there is no disinterested trustee] would be a unilateral proceeding proposed by a debtor and approved by an uninformed creditor group.' *Creditor Committee Functions and Expenses under Chapter XI of the Bankruptcy Act,* H.R.Rep. No. 121, 90th Cong. 1st Session at 3 (1967)." Report of the Commission on the Bankruptcy Laws of the United States, Part II, p. 218 (1973).

Under the Bankruptcy Act, members of a creditors' committee were elected by the debtor's creditors. To many critics it appeared that the election process had failed to bring about creditor control because, as the Commission's Report noted, the election process had permitted the control of administration to fall into the hand of persons whose principal interest is not in what the estate can be made to yield to the unsecured creditors but in what it can yield to those involved in its administration or in other ulterior objectives. *Id.* at 219. Accordingly, one of the reforms accomplished through the new law was to substitute appointment by a disinterested individual, the bankruptcy judge or the United States trustee, for election by the creditors.

When the present Bankruptcy Code was evolving there were two key interdependent concepts: One was that independent government officials, the United States trustees, would act as "bankruptcy watchdogs, overseeing the qualifications and appointments of private trustees in bankruptcy cases, supervising their performance, [and] monitoring their fees..." H.R. 95–595, 95th Cong. 1st Sess. p. 4 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5966. The second was that the bankruptcy judge would be relieved of administrative responsibilities and confine himself to judicial functions. To quote the same seminal report respecting an earlier version of the legislation which became the Code, "The bill removes many of the supervisory functions from the judge in the first instance, transfers most of them to the trustee and to the United States trustee, and involves the judge only when a dispute arises. Because the judge no longer will have to take an active role in managing bankruptcy cases, the bankruptcy court should become a forum that is fair in fact and in appearance as well." *Ibid.*

As the Code was ultimately enacted, however, United States trustees were appointed only in a few districts denominated pilot districts, of which the Southern District of New York is one, but the Eastern District is not. The lack of the United States trustee in a non-pilot district has had two consequences: One is that it has not been possible to divorce the bankruptcy judge from all administrative duties; the second, and equally serious, is that there is no one to police the enormous power over their own assets given insolvent debtors by the Code. In a non-pilot district the only check on a debtor-in-possession is the creditors' committee.

Without in any way impugning the good faith of the debtor in this proceeding, this case is the type of case in which unsecured creditors have good reason to monitor the debtor's activities most closely. Although the debtor has filed under the reorganization provisions of the Bankruptcy Code and thereby remains in possession of all of its assets, it is no longer operating its regular business. It is liquidating some portion of its assets and has stated that may very well liquidate everything. Before it filed for relief under the bankruptcy laws, the debtor discharged all its employees; since then it has sold all its inventory; it no longer carries on its former manufacturing activities; and is currently leasing its facilities to third parties, what it is now conducting is simply a warehousing operation. It may be that the slow liquidation now being conducted under the auspices of the manage-

ment responsible for the present condition of the debtor is in the interest of the unsecured creditors, on the other hand it may be that the unsecured creditors would best be served by a liquidation pursuant to Chapter 7 by a trustee.

If this court were in a pilot district the creditors could count on the United States trustee to exercise some supervision over the debtor's liquidation of its assets, but in this district there is no United States trustee, only an Estate Administrator, without a staff or the status of the United States trustee.

It is in this context that the creditors' committee seeks to augment its resources by increasing its membership to include persons interested in functioning on the committee. However, as noted earlier, the debtor, opposes the power of the court to permit the committee to do so. The debtor relies on a group of cases all decided in pilot districts. *Matter of Hadar Leasing International Co., Inc., supra; In re Computron Technologies Corp.,* 81 B 10477 (B.C.S.D. N.Y.) (Unreported decision, April 28, 1981); *In re Kontaratos,* 10 B.R. 370 (Bkrtcy.D. Maine 1981). In those districts where the United States trustee is charged with appointing the members of the committee and where he has changed their membership as needed, the bankruptcy judges have refused to interfere with how he exercises his authority. They have refused on the ground that such interference would be contrary to the purposes of § 151102 to remove "that portion of the administrative machinery from the hands of the bankruptcy judge so that the bankruptcy judge would, indeed, become a judicial officer as that term is properly defined, to wit, that it handle only adversary proceedings and contested matters and that it not interfere with the administrative machinery of the estates in this Court". *In re Computron Technologies Corp.,* 81 B 10477 (April 21, 1981) (Bankruptcy Judge Lewittes) quoted in *Matter of Hadar Leasing International Co., Inc., supra,* at 461. But in this district § 151102 does not apply. The portion of the administrative machinery concerned, that is the appointment of creditors' committees, has

been left in the hands of the bankruptcy judge. Acceptance in the non-pilot districts of the restrictions on bankruptcy judges appropriate to a pilot district would leave a vacuum. While in the pilot district a committee could readily be enlarged and strengthened by the United States trustee, in a non-pilot district no one could exercise that power. Ironically, in the non-pilot districts a bankruptcy judge would have less authority than a United States trustee in the pilot districts. Furthermore, this vacuum in the powers of the bankruptcy judge to strengthen and improve a creditors' committee would exist in just those circumstances where a strong creditors' committee is the most needed because there is no United States trustee and, therefore, no control over the unilateral actions of a debtor.

This result is so abhorrent and so inconsistent with any rational legislative intention that it must be rejected. The only construction of the pertinent sections which yields a reasonable result is that in the non-pilot districts the bankruptcy judges have the same power pursuant to § 1102(a) to change the membership of a creditors' committee as the United States trustee in the pilot districts pursuant to § 151102; that in both pilot and non-pilot districts parties who believe the result to be non-representative may move pursuant to § 1102(c) for a change in the membership or size of the committee, but that § 1102(c) no more limits the power of the bankruptcy judge to exercise his discretion in the first instance under § 1102(a) than it restricts that of the United States trustee under § 151102(a). Section 1102(c) creates a right in an interested party to compel a change in the composition of a committee; § 1102(c) does not limit the discretion vested in the bankruptcy judge by § 1102(a). It would be a most unusual statute that deprived a court of the power to alter its own order, the order creating the creditors' committee.

To paraphrase the Southern District opinions cited earlier, subject only to the right of a party in interest to contend that the committee is not representative, the bankruptcy judge in a non-pilot district has ple-

nary power with respect to the appointment of creditors' committees.

One further observation is appropriate. A debtor has sufficient interest in the composition of a creditors' committee to be entitled to oppose the appointment to it of a creditor who may be vindictive or for any other reason may be an inappropriate representative of the creditors, but otherwise it does not sit well in the debtor's mouth to argue who shall represent the creditors to whom he is indebted. His standing to do so is at least debatable. His interest and those of his creditors are not necessarily congruent; they may, in fact, be directly opposed.

Accordingly, the debtor's objection to the changes requested in the creditors' committee is overruled. An order according the creditors' committee the relief it seeks is being issued simultaneously with this opinion.