In re A.H. ROBINS COMPANY, Incorporated, Debtor.

Employer's Tax Identification Number 54–0486348

Patricia VAN ARSDALE, et al., Plaintiffs (In Contested Matter),

v.

Dr. Helen R.H. CLEMO, et al., Defendants. (In Contested Matter).

No. 85–01307–R.

United States District Court, E.D. Virginia, Richmond Division.

Sept. 16, 1986.

William R. Cogar, Mays & Valentine, S. David Schiller, Asst. U.S. Atty., Lawrence B. Cann, III, Little, Parsley & Cluverius, James C. Roberts, Mays, Valentine, Davenport & M., W. Scott Street, III, Williams, Mullen & Chris, Stanley K. Joynes, Rilee, Cantor, Arkema & Edmonds, Theodore I. Brenner, Bremner, Baber & Janus, Richmond, Va., Harold S. Novikoff, Wachtell, Lipton, Rosen & Katz, H. Sean Mathis, Jesup & Lamont Capital Corp., Dennis J. Drebsky, Skadden, Arps, Slate, Meagher & Flom, Robert M. Miller, Bishop, Liberman & Cook, New York City, Ralph R. Mabey, LeBoeuf, Lamb, Leiby & MacRae, Salt Lake City, Utah, Mark Budnitz, S.E.C., Atlanta, Ga., M. Caldwell Butler, Woods, Rogers & Hazlegrove, Roanoke, Va., Ross C. Reeves, Willcox & Savage, Norfolk, Va., Murray Drabkin, Cadwalader, Wickersham & Taft, Washington, D.C., for A.H. Robins Co.

William C. White, Alexandria, Va., U.S. trustee.

Bryan D. Garruto, Karen Ann Kubalak, Garruto, Galex & Cantor, E. Brunswick, N.J., for plaintiffs Margaret L. Benedict and Lisa Adler.

Richard M. Wexell, Fairfax, Va., Local Trial Counsel for plaintiffs.

James F. Szaller, Brown & Szaller Co., L.P.A., Cleveland, Ohio, for plaintiffs Patricia Van Arsdale and Beverly Jane Blake.

Mary Beth Ramey, Ramey and Hailey, Indianapolis, Ind., for plaintiffs Jacqueline Patterson and Nadine Hilliard.

Bradley Post, Post, Syrios & Bradshaw, Wichita, Kan., for plaintiffs Billie Rae Mercer and Patricia Ann Tronsgard.

Douglas Bragg, Bragg & Dubofsky, P.C., Denver, Colo., for plaintiffs Marsha Brown and Wendy Busch.

Fredric A. Bremseth, Stone, Ribble, Bremseth, Meyer, Collins and Wood, Minneapolis, Minn., for plaintiffs Mary Janik and Shelly Marti.

John J. Davids, Conklin, Davids & Friedman, San Francisco, Cal., for plaintiffs Ruth Abrams and Wendy Amos.

## MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on plaintiff's motion to challenge, as unrepresentative, the members of the official Dalkon Shield Claimants Committee. The motion has been fully briefed and argued and is ripe for disposition.

*Background*

Prior to the commencement of this reorganization proceeding an ad hoc committee of 38 attorneys, representing Dalkon Shield claimants, was organized to promote the interests of the Dalkon Shield claimants. On September 12, 1985, this group retained Murray Drabkin of Cadwalader, Wickersham & Taft ("C, W & T") as its bankruptcy counsel. This committee was later appointed by the United States Trustee ("Trustee White") as the representative body of unsecured creditors allegedly injured from the use of the Dalkon Shield. *See* 11 U.S.C. §§ 1102(a)(1), 1102(b)(1). Subsequent to the appointment by Trustee White, the committee, with the Court's approval, retained the law firm of Little, Parsley &

Cluverius as its local counsel, and sought and received Court approval in regard to the retention of the Cadwalader firm.

On February 24, 1986, Murray Drabkin filed a motion to withdraw as counsel by reason of having been discharged by the committee. That same day Trustee White moved to dissolve the committee or alternatively to change its size and membership. After the hearing on March 4, 1986, the Court found the Claimants Committee, *inter alia,* "unmanageable." That same day the Court denied Drabkin's motion to withdraw as counsel to the committee and instead requested that his firm remain as counsel to the Dalkon Shield claimants until such time as a new committee were appointed who could retain counsel of their own choosing.[1]

On March 22, 1986 a new Claimants Committee was appointed by Trustee White. The new committee includes three women who are themselves claimants in this bankruptcy and two attorneys who served as members of the old Dalkon Shield committee, Mr. O'Gorman H. King and Ms. Judith J. Rentschler.

After interviewing numerous other candidates, the new committee decided to continue its retention of C, W & T as its bankruptcy counsel and Little, Parsley & Cluverius as its local counsel in the proceeding.

*Timeliness*

Movants filed this motion on May 22, 1986, approximately two months after the present Claimants Committee was appointed. The Court finds that a two-month delay in filing the instant motion is untimely, in light of the fact that the movants knew the members of the committee and how they were selected as early as March 30, 1986. In light of this knowledge they chose to sit idly by for over two months while the present committee expended time and effort on the difficult problems in this case.

Despite its untimeliness, the Court will, nevertheless, address the substantive legal issues raised in this motion.

*Merits*

The movants argue that the present Claimants Committee is unrepresentative for two reasons. First they argue that the committee members do not represent the world-wide interests of the Dalkon Shield creditors. Second, the movants erroneously contend that the present committee is unrepresentative because its members were chosen contrary to the underlying principles of the Bankruptcy Code.

The Court finds that the committee is representative.

1. *Representativeness in Fact.*

The movants argue that the five members presently serving on the Dalkon Shield Claimants Committee cannot be representative of the Dalkon Shield creditors' interests in this bankruptcy. It is the movants' position that in order to be representative, the committee must be geographically diverse, have a diverse attorney representation, which would include attorneys who had represented various numbers of Dalkon Shield claimants and attorneys with varying amounts of Dalkon Shield trial experience, and be philosophically diverse, which would necessitate a large number of members on the committee.

The movants' position, however, is unsupported by statute, unsupported in case law, and unsupported in fact.

Section 151102 of the Bankruptcy Code, the governing provision in· pilot dis-

---

1. Movants argue that the Court retained Drabkin and C, W & T as its legal expert and take issue with the Court's use of that title. Although that may have been what the Court technically named Drabkin's position at the time of the hearing, the transcript reflects that the Court explained his duties as involving a representation of the Dalkon Shield claimants during the interim period when there was not a Dalkon Shield claimants committee. The transcript will further reflect that the Court, in subsequent

tricts[2] of the appointment of creditors' committees, provides that "[a]s soon as practicable after the order for relief under this chapter, the United States Trustee shall appoint a committee of creditors holding unsecured claims." 11 U.S.C. § 151102. Section 1102(b)(1) which also applies in pilot districts, provides the following guidance as to the composition of the committee:

A committee of creditors ... shall consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

11 U.S.C. § 1102(b)(1).

These guidelines, however, do not impose mandatory requirements on committee composition. A leading treatise on Bankruptcy Law, *Collier's on Bankruptcy*, provides the following insight into the requirements of a committee's membership:

The ... United States trustee has considerable flexibility in selecting members of the section 1102(a)(1) committee. Since the language of section 1102(b)(1) is "precatory", ... the United States trustee ... may appoint as members of the committee under Section 1102(a)(1) those creditors that the ... United States trustee determines will best represent

holders of unsecured claims. *Such appointments may be made irrespective of whether such persons are among the holders of the seven largest unsecured claims, [or] members of a committee organized prior to the filing of the case.*

5 *Collier's on Bankruptcy* [hereinafter referred to as Collier's] ¶ 1102.01[2] (15th ed. 1986).

Accordingly, the movants' argument that the present committee is unrepresentative because the present committee members do not hold the seven largest claims (a fact of which the Court is unaware), and are not members of a committee organized by creditors prior to the commencement of the case under Chapter 11, is in error. What is relevant to the instant issue is whether the composition of the committee is "representative of the different kinds of claims or interests to be represented." *Collier's* ¶ 1102.01[5].[3]

No evidence was presented at the trial of the issue, raised by the movants, which questioned, or put into doubt, the qualifications of any of the present committee members. In fact, it was the uncontroverted testimony that all five members were chosen because of their excellent credentials and their willingness to spend the time needed to serve the interests of the Dalkon Shield claimants.

The Court finds that each member of the committee is either a Dalkon Shield claimant[4] or the authorized representative of a Dalkon Shield claimant. It is

---

hearings, referred to Drabkin as the legal representative to the Dalkon Shield claimants.

2. The Eastern District of Virginia is a "pilot district," and in those districts that are "pilot districts" creditors' committees are appointed by the United States Trustee. In the instant matter, William C. White is the functioning United States Trustee appointed by the United States Attorney General. It is Trustee White's responsibility and duty to perform the supervisory and appointing functions previously handled by bankruptcy judges under the former Bankruptcy Act.

3. The challenge to the representativeness of the committee was brought pursuant to 1102(c), which provides, in part, that "[o]n request of a

party in interest and after notice and a hearing, the Court may change the membership or size of a committee ... if the membership of such committee is not representative of the different kinds of claims or interests to be represented." 11 U.S.C. § 1102(c).

4. Movants argue that the filing of a claim, by one of the committee members, after her appointment on the committee, renders her dedication to the cause, or ability to represent claimants, questionable. The Court finds the movants' argument immaterial to the issue regarding her qualifications as a member of the committee. All claimants had until April 30, 1986 to file their claims, and the committee member whose date of filing was questioned by the movants made a filing well within that time frame.

this Court's further finding that the membership of the present committee is highly diverse. The present committee members come from Richmond, Virginia, Lexington, Kentucky, Washington, D.C., Fargo, North Dakota and San Francisco, California. Its members thus reside in the North, the South, the Mid-West, and on the East Coast. Because the present committee members have varied backgrounds, they contribute different kinds of expertise to the work of the committee.[5]

Based on these findings, the Court concludes that the present committee is representative in fact.

### 2. *Representativeness in Law.*

■ The movants argue that the committee is unrepresentative because it was chosen contrary to the tenets of the Bankruptcy Code. It is their position that the committee members were selected in an effort to retain Murray Drabkin of C, W & T as bankruptcy counsel to the committee. The Court disagrees and finds the evidence overwhelmingly supportive that Trustee White appointed the present committee because of their qualifications and commitment to the interests of the Dalkon Shield claimants.

The Court's finding that the individuals who comprise the present committee are representative is, in the Court's view, dispositive of the issues pending before the Court in this motion. Nevertheless, the movants argue that the appointment process, as provided for in the Code, is equally dispositive of the issue concerning the committee's representativeness, and thus the Court will address this issue.

The legislative history of the House Bill does provide the following:

### C. Administration and Reorganization Cases.
. . . .

The selection of creditors' committees will also differ in reorganization cases. First, the bill permits more than one committee in reorganization cases. The supervisory function of the committees will be diminished, due to the existence of the United States trustee. They will primarily be negotiating bodies for the classes of creditors that they represent. As such, it is important that they be representative of their respective classes, and not chosen by attorneys for creditors that seek the position of counsel to the committee. The bill provides that the court appoint the creditors' committees in reorganization cases. The court is directed to appoint a representative committee, and to give due consideration to the holders of the largest claims of the represented class, or to the members of a functioning creditors committee formed in connection with negotiations conducted before the case was filed. Court appointment under a statutory requirement that committees be representative is more likely to assist in successful reorganizations than proxy election, by attorneys, of a committee that may not truly represent the interests of its constituents.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. p. 104–105 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6065, 6066.

Despite the legislative concern with attorney control of committee selection, the evidence from the hearing supports the Court's ultimate conclusion that the committee was not chosen so that Murray Drabkin of C, W & T would be retained as counsel.[6]

---

5. The movants imply that the small size of the committee is not representative of the 300,000 Dalkon Shield claims presently before the debtor. The Court finds the size of the committee immaterial to the issue of representativeness. The court mistakenly acquiesced to a 38–member committee at the beginning of this proceeding and will not make such a mistake twice. Accordingly, the Court suggested numerical limitations on the composition of this present committee which Trustee White adhered to in his appointment of the present committee.

6. The movants do not question the propriety of the committee's retention of Little, Parsley & Cluverius.

■ Trustee White asked for suggestions of individuals who would be competent representatives of the Dalkon Shield claimants.[7] His "solicitation" drew input from, *inter alia*, Stanley K. Joynes, III, the attorney representing the Future Tort Claimants, George Little and Brad Cann, the attorneys who, at that time, served as local counsel to the Claimants Committee, Murray Drabkin, the attorney who, at that time, served as bankruptcy counsel to the claimants, and David Schiller, an Assistant United States Attorney. It is the movants' position that despite this "solicitation" of candidates, those who Trustee White eventually appointed were appointed because they would retain Drabkin and the law firm of C, W & T, as its counsel.

The evidence does not support the movants' contention.

The movants argue that Gorman King, a member of the dissolved Claimants Committee, was selected because he supported the retention of Drabkin. George Little and William Cogar[8] both testified that King had excellent qualifications. Trustee White, who ultimately appointed the attorney, said he was chosen because of his qualifications and commitment to the Dalkon Shield claimants. The evidence does not support the inference that King's appointment was made because he supported Drabkin, but instead the evidence supports this Court's finding that he was appointed because of his superb qualifications.

The movants also argue that Judy Rentschler, another member of the dissolved Claimants Committee, was appointed because of her alleged support for Drabkin. However, as George Little recalled from personal conversations he had with Drabkin, Drabkin was concerned with the appointment of Rentschler; he believed she would not support the retention of his firm. Despite Rentschler's apparent lack of expressed interest in the retention of Drab-

---

7. Movants argue that Trustee White violated the tenets of the Bankruptcy Code by soliciting suggestions for potential appointments to the committee. They argue, in their Trial Brief at p. 24 that:

> Because the present Bankruptcy Act does not specify how to determine if a committee formed has been "fairly chosen," the leading author in bankruptcy has suggested that reference should be made to Bankruptcy Rules 2006 and 2007, governing appointment of creditors' committees in Chapter VII cases. [*See Collier on Bankruptcy*, Section 1102.01 at ˙1102–10 (1985)]. This inquiry is relevant because of the insights of proscribed conduct gleaned from the prohibitions in Rules 2006 and 2007 regarding solicitation of votes.

The movants' reliance on this treatise for an explanation of how to determine if a committee has been fairly chosen is misplaced. The treatise explains on the page the movants cite, that Bankruptcy Rules 2006 and 2007 are to be used when determining if an ad hoc committee organized prior to the commencement of a bankruptcy proceeding was fairly chosen. Specifically, *Collier's* provides:

> The Code does not specify criteria pursuant to which it may be determined that a committee formed prior to the commencement of the case under chapter 11 has been fairly chosen. In determining whether a committee of unsecured creditors has been fairly chosen, reference should be made to Bankruptcy Rules 2006 and 2007 which govern appointment of creditors' committees organized before entry

of an order for relief and solicitation and voting of proxies in chapter 7 cases.[23]
*Collier's*, ¶ 1102.01[2].

Footnote 23 of that passage then refers the reader to ¶ 1102.01[4] which governs, in its entirety, the appointment of a creditors committee organized before the order of relief. If an attorney solicits and votes proxies for an ad hoc creditors committee formed pre-petition, that proxy solicitation must conform with Bankruptcy Rule 2006, which governs proxy solicitation in chapter 7 cases. Proxy solicitation has nothing to do with this committee, which was appointed post-petition and solely by the United States Trustee. There is nothing in the statute to even suggest that the United States Trustee cannot solicit *recommendations* for potential candidates. There is no proxy solicitation or proxy voting in this matter, and movants' reliance on Bankruptcy Rules 2006 and 2007 as controlling Trustee White's actions in this matter is completely wrong. There is no analogy.

8. William Cogar testified that his law firm spent a considerable amount of time investigating Gorman King as a potential claimant. Cogar testified that King had been associated with a firm that Robins had sought recusal of in prior Dalkon Shield litigation. It was important to Robins, therefore, to investigate his association with the firm, and more importantly, his qualifications as a committee member. The result of the investigation was that the debtor did not object to King's appointment because he was superbly qualified.

kin, Trustee White appointed Rentschler, a competent and keenly qualified candidate, to the new committee.

Also, the evidence did not support the movants' inference that the appointments of the three other members were based on their commitment to the retention of Drabkin and the law firm of C, W & T. The only member of the committee who testified at the hearing stated, unequivocally, that she was not aware of her duty to appoint counsel until after the committee had been organized and officially charged by the Court. It was her testimony that it was not until the committee conducted interviews of law firms interested in being retained that she, and the other members of the committee, made a decision regarding counsel. She further testified that the Committee abided by the Court's charge that they were free to choose their own counsel.

Stanley K. Joynes, III testified that he recommended Joe Friedberg of Minnesota as a potential member of the new committee. However, his recommendation was rejected by Trustee White because Friedberg conditioned his membership on, among other things, the retention of a particular law firm as the committee's bankruptcy counsel. Such a demand would have been, as Trustee White concluded, in contravention to what he perceived the most important concern of a committee member, i.e., unconditioned dedication to the interests of the Dalkon Shield claimants.

After reviewing all the suggestions, Trustee White appointed the five-person committee to represent the Dalkon Shield claimants.[9] He told the newly-appointed group that it was important that they retain counsel as soon as possible, however, he specifically advised them of problems which had arisen between Drabkin and the former committee. In fact, White admonished the committee, as the member witness testified, that the former committee had problems communicating with Drabkin.

Dr. Clemo, the committee member who testified, stated that the present committee interviewed five law firms, including C, W & T, before it decided to hire C, W & T. In fact, it was Dr. Clemo's testimony that after all the interviews were conducted, it was "very clear to all on the committee to hire Drabkin." Dr. Clemo testified that the committee supported Drabkin for five reasons. The committee felt that Drabkin (1) had excellent credentials, (2) had an excellent presentation; (3) was intimate with the case; (4) was talented and had an attitude that could pull people together; and (5) that he was committed to the Dalkon Shield claimants.

The committee's "clear-cut" decision was made in light of Trustee White's admonitions, and those of the Court. The Court had charged the committee with the following:

> You also have the right to select a lawyer. Now, in that connection, that's why it may be difficult to take your training out of it, you are the claimant's committee and please—he who represents himself is said to represent a fool. When you choose your lawyer, let him be the lawyer. Doesn't mean you have to follow the lawyer's advice, his or her advice 100 percent, but we can't have four or five members of the committee working off in all different directions. So let your lawyer be the coordinator, so to speak.

9. The movants, at the hearing, suggested in argument that Trustee White's review of only twelve applications of possible committee members was a breach of his duty as trustee. *Collier's* specifically addresses the nature of a trustee's duties regarding the appointment of committee members and finds it a "ministerial task." *Collier's*, 1102.01[3]. Further, the treatise explains that [t]he level of inquiry concerning the qualifications of prospective members of the committee need only be superficial.... [t]he trustee is only required to establish that a person is an unsecured creditor and is willing to serve." *Collier's*, 1102.01[3]. The evidence overwhelmingly supports Trustee White's fulfillment of his duties. In fact, the evidence represented that Trustee White, concerned that a competent, interested, and manageable group be appointed, interviewed approximately twelve applicants after discussions with various persons regarding potential candidates for the Dalkon Shield Claimants Committee.

And I want you to know that while the former committee had an attorney, *you are free to choose any lawyer that you wish.* You may interview them and make your own decision, and I will tell you now that the Court will—I cannot conceive how the Court will not approve your selection, whoever it may be. (emphasis added).

*Court Transcript,* March 22, 1986, at 4–5.

It was Dr. Clemo who testified that the committee's decision to retain Drabkin and C, W & T was uninfluenced by Trustee White. In fact, Dr. Clemo could not even speculate as to what firm, if any, would have been preferential to Trustee White.

The evidence contradicts the movants' argument, unsupported by evidence as it is, that this committee was appointed so that Drabkin could continue his representation of the committee.

The Court concludes, without reservation, that the present committee was appointed for the sole purpose of retaining qualified and competent individuals, willing to give of their time and efforts to serve the interests of this massive class of creditors.

*Conclusion*

The movants urge the Court to take isolated, unrelated, events and draw conclusions based on surmise and conjecture. The Court will not draw such unrealistic inferences from the evidence as movants have encouraged. This committee of Dalkon Shield creditors is representative and the evidence before this Court supports such a finding. For the reasons stated in this memorandum, the Court will deny the movants' motion to declare the committee unrepresentative and to dissolve its membership.

Indeed, the complete lack of evidence presented in support of the movants' motion warrants the Court's considering the imposition of attorney fees and costs against their counsel pursuant to Rule 11, F.R.Civ.P.

An appropriate order shall issue.