In re The DREXEL BURNHAM LAM-
BERT GROUP, INC., Debtor.

No. 90B–10421 (HCB).

United States Bankruptcy Court,
S.D. New York.

June 14, 1990.

Ropes & Gray by Steven T. Hoort, Bos-
ton, Mass., for Liquidators of Drexel Burn-
ham Lambert Finance Ltd.

Harold Jones, U.S. Trustee, New York
City.

Jones Day Reavis & Pogue by Cindy
Tzerman, New York City, for Official Cred-
itors Committee.

Securities & Exchange Com'n by Richard
A. Kirby, Joseph H. Harrington, Washing-
ton, D.C.

HOWARD C. BUSCHMAN, III,
Bankruptcy Judge.

C.T.E. Hayward and I.G. Watt, joint liq-
uidators (the "Liquidators) of Drexel Burn-
ham Lambert Finance Ltd., seek an order,
pursuant to 11 U.S.C. § 1102 (1986), direct-
ing the United States Trustee to appoint

them to the Official Committee of Unsecured Creditors (the "Committee"). The motion is opposed by the United States Trustee (the "U.S. Trustee") and the Committee.

The Drexel Burnham Lambert Group, Inc. (the "Debtor") commenced this bankruptcy case on February 13, 1990 with the filing of a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (1986) (the "Code"). An organizational meeting of the Debtor's creditors was convened by the office of the U.S. Trustee on February 27, 1990 and various entities were selected to serve on the Committee.

The Liquidators were appointed in England on February 16, 1990. They claim to be owed roughly $68 million directly and some $29 million indirectly by the Debtor. On or about March 15, 1990, after the Committee was selected, they requested the U.S. Trustee to add them to the membership of the Committee. The U.S. Trustee declined within two weeks later.

By motion made on May 15, 1990, originally returnable on June 1, 1990 and adjourned to June 14, 1990, the Liquidators seek to be appointed to the Committee.

## II

Section 1102(a) of the Code provides:

(a)(1) As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States deems appropriate.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

Noteworthy is the absence of any indication in the statute that the court may add to or delete an unsecured creditor from a committee. Indeed, section 1102(c) was amended in 1986, as part of a nearly nationwide expansion of the United States Trustee program, not only to revise section 1102(a) by vesting the appointive power in U.S. Trustees but also, to delete former section 1102(c). That section had expressly enabled the court to add to and delete creditors from creditors' committees.

In the construction of this statute, its words control. *E.g., United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). Legislative history is consulted to see if Congress could have intended another meaning. *Id.; Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1975). Here, the legislative history is uninformative. *See In re Public Serv. Co. of New Hampshire,* 89 B.R. 1014, 20 C.B.C.2d 196 (Bankr.D.N.H. 1988) ("PSNH"). From the statutory language, there can be but one conclusion: section 1102(a) does not authorize the relief requested.

Nevertheless, citing to *In re McLean Ind. Inc.,* 70 B.R. 852 15 Bankr.Ct.Dec. 864, Bankr.L.Rep. (CCH) ¶ 71745, 16 C.B. C.2d 645 (Bankr.S.D.N.Y.1987); *In re Texaco, Inc.,* 79 B.R. 560, 16 Bankr.Ct.Dec. 869 (Bankr.S.D.N.Y.1987); *In re First Republicbank Corp.,* 95 B.R. 58 (Bankr.N.D.Tex. 1988); *In re Sharon Steel Corp.,* 100 B.R. 767, 19 Bankr.Ct.Dec. 780 (Bankr.W.D.Pa. 1989); and *PSNH,* the Liquidators claim that the Court has authority. In *McLean,* this Court stated in *dicta* that the repeal of former section 1102(c) precluded the court's adding a committee member pursuant to section 1102. 70 B.R. at 860. In *Texaco,* the Court noted the expense of two committees and effectively merged one committee into another without any discussion of the present language of section 1102 or the repeal of former section 1102(c). *See* 79 B.R. at 467. In *Sharon Steel,* the Court held that the U.S. Trustee could not appoint a second committee in violation of a court order, entered under the pre–1986 version of section 1102, appointing a single committee. 100 B.R. at 783. In *First Republicbank,* the Court, on a motion to delete a committee member, stated that it

might "presumably" have authority to correct abuses by the U.S. Trustee, pursuant to section 105(a) of the Code, 95 B.R. at 60, but did not grant the motion. Section 105(a) states that a court may issue orders "necessary and appropriate to carry out the provisions of this title," not in ignorance of what Congress has wrought. In *PSNH*, the Court stated that it would not decide the authority issue but would direct the appointment of an additional committee member as a "lesser included remedy" without any citation to authority or canons of statutory construction. 89 B.R. at 1021. This line of authority is hardly a mandate for court authority to grant the instant motion in light of the current version of section 1102.[1]

Understandably, the courts in *Texaco* and *PSNH* were concerned with the costs attendant to an additional committee. We share those concerns and in other cases have required separate committees to share accountants. But section 1102(a) provides that inadequate representation is to be addressed by a court through the creation of another committee. That is what Congress wrote. Its words are not to be ignored. Perhaps it should change the statute, perhaps the cost could ameliorated, or perhaps Congress contemplated relief under other statutes not cited or analyzed by the Liquidators. *See* note 1 *supra*. But section 1102, relied on by them, cannot be said to afford the relief they seek.

### III

■ In addition, the motion by Liquidators is hardly timely. Their request was denied by the U.S. Trustee in late March 1990; the instant motion was made nearly two months later. Notwithstanding the Committee's and U.S. Trustee's objections to the delay and the Committee's observation that this case has proceeded at an exceptionally fast pace and its members having absorbed volumes of information, the Liquidators offer no reason for their delay.

A motion under section 1102 should be made promptly. It is important that committees begin functioning promptly as this Committee has. It is important that they organize quickly, make initial decisions, investigate and start negotiations as this Committee has. Various groups must learn to work together. To grant belatedly brought motions to change committee membership only adds disruption and uncertainty.

In *A.H. Robins & Co.*, 65 B.R. 160, 162 (E.D.Va.1986); *aff'd sub nom. Arsdale v. Clemo*, 825 F.2d 794 (4th Cir.1987), the district court held that a motion, challenging the representativeness of a committee under section 1102(a)(2), filed seven weeks after the selection of the committee was untimely. The Fourth Circuit affirmed, holding:

> Despite their adamant opposition to the new claimants' committee, appellants did not file their motion until seven weeks after the appointment of the new committee. Obviously, the initial weeks of a creditors' committee's existence are crucial. In this period important decisions are made on such issues as the appointment of committee attorneys and the formation of negotiation strategy. The appellants have no right to sit idly by for seven weeks while the committee expended time and effort on the case. The appellants were aware of all the facts necessary to bring this action with-

---

1. The Liquidators, in their papers, make no assertion that the Court should consider their motion pursuant to the judicial review standards of the Administrative Procedure Act, 5 U.S.C. §§ 702, 706 and remand the issue to the U.S. Trustee. The Securities and Exchange Commission has made such an assertion in a similar motion brought on February 28, 1990 and currently scheduled to be heard on August 13, 1990. In a brief filed on the evening before the hearing on the instant motion after all other briefs had been filed, the S.E.C. suggests that that Liquidators' motion be considered under the judicial review standards of the A.P.A. This belated brief raising new issues is untimely and the issue of judicial review is a substantial issue not to be raised at the last minute. Moreover, the Liquidators on pp. 5–6 of their Reply Brief say there is no need to remand. Thus, the issue of judicial review pursuant to the A.P.A. remains for another day to be considered on the S.E.C.'s motion itself, not in the last minute fashion it has been raised here.

in one week of the new committee's appointment. Appellants have offered no explanation for their delay.

825 F.2d at 797. Here the delay is of similar magnitude, the Committee has done far more extensive work than selecting counsel and formation of negotiation strategy, and there is similarly no explanation for the Liquidators' delay.

The motion is untimely and is also to be denied for that reason.

## IV

■ Perhaps most noteworthy of this motion is the failure to plead sufficient facts regarding the one issue the Court is directed to consider by section 1102(a): necessity to assure adequacy of representation. The Liquidators' moving papers failed to state that relief was necessary for that purpose. Their reply brief states only that the Committee membership does not include any holder of a "claim similar to that of the Liquidators on behalf of DBL Finance, namely, those of a subsidiary which is no longer under the control of the Debtor." They say that "their voice should be heard." Reply Br. p. 12.

■ The standard of adequate representation, however, lies not in the uniqueness of a single claim but "in the nature of the case and the composition of the committee." McLean, 70 B.R. at 861. As there noted, these factors focus on whether the nature of the case might affect different segments of debt, such as subordinated debentures, differently. Id. Thus, the chief concern of adequacy of representation is whether it appears that different classes of debt and equity holders may be treated differently under a plan and need representation through appointment of ad-

ditional committees. H.R.Rep. No. 595, 95th Cong., 1st Sess. 401 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787; see also McLean, 70 B.R. at 861; In re Beker Ind. Corp., 55 B.R. 945, 13 Bankr.Ct.Dec. 1230, 13 C.B.C.2d 1338 (Bankr.S.D.N.Y. 1985). The Liquidators make no claim that debt owed to subsidiaries is likely to be treated differently from other unsecured debt, and there is, therefore, a need for representation in the negotiation process.[2]

Instead of truly addressing these notions, the Liquidators stress that they are qualified since they hold large claims, citing to section 1102(b)(1). That section provides that a creditors committee "shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee." 11 U.S.C. § 1102(b)(1) (1986). Its language, enacted in 1978, is only "precatory" and "nonbinding," however. H.R.Rep. No. 595, 95th Cong., 1st Sess. 401–402 (1977). It affords no right of membership.[3]

Throughout the Liquidators' papers is the mistaken notion that they will be voiceless in this case unless appointed to the Committee. There can be no question that creditors' committees play a central role in Chapter 11 cases. But section 1109(b) of the Code enables all creditors to be heard on any issue. The Liquidators also enjoy the right to make motions, see, e.g., 11 U.S.C. § 1112, and, most importantly, retain the right to vote and all of the other creditor protections contained in Chapter 11. Committees are not designed to provide a speaker's platform for a particular creditor. They are designed to enable investigation and to provide a forum for negotiation on behalf of all of the claims or

---

**2.** At the hearing, the Committee stated that subordination might be an issue but conceded lack of knowledge of grounds therefor.

**3.** In light of our holdings that the motion is untimely, that relief sought under section 1102(a) may not be granted under that section, and that the pleadings set forth no grounds for relief on lack of adequate representation grounds, we do not reach the issues raised by the Committee that the Liquidators are "insid-

ers" under 11 U.S.C. § 101(30) and as representatives of other Drexel entities are conflicted and thus ineligible. We also do not decide the S.E. C.'s last minute claim that the court has general supervisory power over U.S. Trustees except to note that U.S. Trustees are appointed by and under the supervision of the Attorney General of the United States. 28 U.S.C. §§ 581(c), 586(c) (1986).

interests they represent.[4]

For the foregoing reasons the motion must be and hereby is denied. It is

SO ORDERED.

See also, Bkrtcy., 118 B.R. 219.

---

**4.** Alternatively the Liquidators ask to be appointed *ex-officio* members. The Code does not contain such authority. *In re Astri. Invest. Mgmt. & Sec. Corp.,* 88 B.R. 730, 740, 18 Bankr. Ct.Dec. 1 (D.Md.1988), on which they rely concerns the right of the press to be present, not the right of a creditor to *ex-officio* membership.