**In re Rick PIERCE, Debtor.**

**Bankruptcy No. 98–19111–A–11F.**

United States Bankruptcy Court,
E.D. California,
Fresno Division.

June 1, 1999.

■

---

Bruce Leichty, Clovis, CA, Pro se.

Jeffrey Lodge, Office of the United States Trustee, Fresno, CA.

Howard B. Sandler, Beckman Lawson LLP, Fort Wayne, IN.

Robert Yaspan, Encino, CA, for debtor.

Nancy Knupfer, Danning, Gill, Diamond & Kollitz, Los Angeles, CA.

## MEMORANDUM OF DECISION DENYING MOTION RE: CREDITORS' COMMITTEE APPOINTEES

WHITNEY RIMEL, Bankruptcy Judge.

A hearing was held on March 18, 1999, on the motion of Bruce Leichty, counsel to the Unsecured Creditors' Committee (the "Committee"), and Ezra Rank, chairperson of the Committee, entitled "Motion for Determination of Qualification of Added Appointees to Creditors' Committee to Serve on Committee, and Regarding Legality of Appointment; or for Appointment of Separate Committee." Following the hearing the court denied the motion, stating its findings of fact and conclusions of law on the record and indicating that written findings of findings of fact and conclusions of law would follow. This memorandum supplements the oral findings of fact and conclusions of law entered at the time of the hearing. Findings of fact and conclusions of law are required by Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

The Committee has seven members. The motion essentially asks the court to

review the appointment of four of the committee members. One of the moving parties is Bruce Leichty on his own behalf. It is unclear to the court whether the motion is brought by the Committee as a whole or by Mr. Rank, its chair, on his own behalf. In any event, if Mr. Rank is bringing the motion on his own behalf, rather than on behalf of the Committee, he is a creditor and, as such, is a party in interest and has standing under Bankruptcy Code § 1109(b) to bring the motion. The United States Trustee ("UST") asserted in its opposition to the motion that Mr. Leichty does not have standing to bring this motion on his own behalf. Because Mr. Rank does have standing to bring this motion, the court need not determine whether Mr. Leichty also has standing in his individual capacity.

The motion has been opposed by the UST and by Rodney Ray, Michael Licciardello, and Dalen Niles, three of the new members of the Committee, as well as by the debtor. Creditor Pam Cury filed a statement in support of the motion.

**Factual and Procedural Background.**

The history of the appointment of members of the Committee has been described by both the moving party in its argument and by the UST in her argument.

On September 23, 1998, Mr. Licciardello, James McKelvey, and Helena Pietro filed an involuntary Chapter 11 petition against the debtor, Rick Pierce. The debtor consented to an order for relief which was entered on October 23, 1998. On November 23, 1998, the debtor filed his bankruptcy schedules. In those schedules, he stated that his assets were over $22,000,000 and that his debts were over $18,000,000. The debtor has estimated that he has about 420 general · unsecured creditors owed about $17,530,000. Of the amounts owed to general unsecured creditors, about $13,500,000 is owed to investors in three limited partnerships. Thus, these "inves-

tors" hold about 77% of the unsecured debt in the case.

The UST solicited creditors to participate on the Committee as soon as a list of creditors became available. Only three creditors initially expressed an interest in serving on the Committee, and the UST appointed an official committee on December 30, 1998, consisting of those three creditors—Barbara Fruechtenicht, Ezra Rank, and Jimmie Lucas.

The continued meeting of creditors under Bankruptcy Code § 341(a) was held January 11, 1999. The meeting was attended by numerous creditors and their representatives.

After the January 11 meeting, four people contacted the UST to state they were willing to serve on the Committee. The UST then appointed these four persons, Rodney Ray, Michael Licciardello, Gerry Whitenack, and Dalen Niles, as additional members of the Committee.

The three initial members of the Committee all have "investor-related" claims.[1] Mr. Licciardello has a general unsecured claim for services. Mr. Ray has a claim for "monies lent." The UST evidently concluded that Mr. Ray's claim is not an "investor-related" claim. Mr. Whitenack and Mr. Niles have "investor-related" claims. The UST has calculated that the composition of the Committee reflects the composition of the unsecured creditor body. Seventy-seven percent of the unsecured claims asserted against the debtor are "investor-related" and 71% of the Committee members hold "investor-related" claims.

The motion asks the court to order

"1. That the amended appointment of committee members made by the United States Trustee on January 21, 1999 is not authorized by statute and that the Committee remains at three members;

---

1. The UST defined "investor-related" claims as "claims attributable to money invested in the Debtor's businesses" as compared to

claims "attributable to business or personal obligations of the Debtor."

2. Alternatively, that the January 21 appointments by the United States Trustee should be vacated for cause;

3. Alternatively, that because of the connections of the January 21 appointees (or one or more of them) to the debtor, all or some of them should be removed by the United States Trustee from the Committee, or should be appointed to a separate additional committee;

4. Alternatively, that a finding is made that one or more of the January 21 appointees are insiders of the debtor . . . ."

### The Court may Review the United States Trustee's Committee Appointments.

■ The duties of the United States Trustee are outlined in 28 U.S.C. § 586. These duties include supervising the administration of Chapter 11 cases, monitoring plans and disclosure statements filed in Chapter 11 cases, and, important for the purposes of this motion, monitoring creditors' committees appointed under the Bankruptcy Code.

The court must address whether it may review the UST's decision to appoint additional members to an existing creditors' committee and, if so, what standard of review is appropriate.

■ Bankruptcy Code § 1102(a)(1) requires the UST to appoint a committee of unsecured creditors "as soon as practicable after the order for relief under chapter 11 of this title." The UST also has the ability to appoint additional committees of creditors or equity security holders as it deems appropriate. Section 1102(a)(2) states that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders . . . ." The UST is to appoint the members of any court-ordered committee pursuant to section 1102(a)(2).

■ Section 1102(b) describes the composition of the creditors' committee generally. "A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee . . . ." Committees are to be fairly chosen and representative of the different kinds of claims to be represented.

Section 1102 does not, however, provide a means by which individual members of a committee may be added or removed. In 1986, section 1102(a) was amended to shift responsibility for committee appointments from bankruptcy courts to United States Trustees. At the same time, Congress deleted section 1102(c), which had read: "On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the kinds of claims or interests to be represented."

Bankruptcy and appellate courts are not in agreement about whether a bankruptcy court has any authority to review the appointment by the UST of members to a creditors' committee or to remove members previously appointed. Some courts, citing the deletion of section 1102(c), have held that the bankruptcy court has no authority to review the UST's committee appointments. Other courts have held that although the UST has been vested with the authority to appoint and remove members of a creditors' committee, bankruptcy courts may nevertheless review the UST's appointment decisions.

The court concludes that the second line of reasoning is correct. For the reasons discussed below, bankruptcy courts do have the ability to review the UST's committee selections, but only if the actions of the UST are arbitrary or capricious or

otherwise constitute an abuse of the UST's discretion.

■ Federal Rule of Bankruptcy Procedure 2020, which took effect in 1991, states that "[a] proceeding to contest any act or failure to act by the United States trustee is governed by Rule 9014." Such a proceeding is, therefore, to be maintained as a contested matter. The Advisory Committee Note to Rule 2020 reads in part: "The United States trustee performs administrative functions, such as the convening of the meeting of creditors and the *appointment of trustees and committees.* Most of the acts of the United States trustee are not controversial and will go unchallenged. However, *the United States trustee is not a judicial officer and does not resolve disputes regarding the propriety of its own actions.* This rule ... provides a procedure for judicial review of the United States trustee's acts or failure to act in connection with the administration of the case." (Emphasis added.)

Further, Federal Rule of Bankruptcy Procedure 2007 implies that courts have the ability to review the appointment of committee members. Rule 2007(a) allows a court to determine, on motion of a party in interest, whether "a committee appointed by the United States trustee pursuant to § 1102(a) of the Code consist[ing] of the members of a committee organized by creditors before the commencement of a chapter 9 or chapter 11 case ... satisfies the requirements of § 1102(b)(1) of the Code." Section 1102(b)(1) requires prepetition committees to be "fairly chosen and ... representative of the different kinds of claims to be represented." The 1991 Advisory Committee Note to Rule 2007 states: "This rule is amended to conform to the 1986 amendments to § 1102(a).... Although § 1102(b)(1) of the Code permits the United States trustee to appoint a prepetition committee as the statutory committee if its members were fairly chosen and it is representative of the different kinds of claims to be represented, the amendment to this rule pro-

vides a procedure for judicial review of the appointment.... *Although this rule deals only with judicial review of the appointment of prepetition committees, it does not preclude judicial review under Rule 2020 regarding the appointment of other committees.*" (Emphasis added.)

While the Advisory Committee Notes to Rules 2007 and 2020 certainly imply that courts may review the appointment of committees by the UST, some courts have found that the 1986 deletion of section 1102(c) from the Bankruptcy Code removed the court's ability to conduct such a review. *See, e.g., In re Victory Markets, Inc.,* 196 B.R. 1 (Bankr.N.D.N.Y.1995). These cases reason that Rule 2020 cannot give what the deletion of section 1102(c) has taken away; 28 U.S.C. § 2075 dictates that the Federal Rules of Bankruptcy Procedure "shall not abridge, enlarge, or modify any substantive right." Thus, the logic goes, the deletion of section 1102(c) leads to the conclusion that the addition or removal of individual committee members may not be an available remedy *under section 1102. Id., see also In re The Drexel Burnham Lambert Group, Inc.,* 118 B.R. 209, 210 (Bankr.S.D.N.Y.1990).

However, the court does not believe that Congress intended to grant the UST wholly unfettered discretion in appointing committee members. Appointments by the UST must, logically, be reviewable in some manner, by some forum. Nothing in the logic or history of the Code indicates that by removing section 1102(c), Congress intended to give the UST unfettered and unreviewable discretion in this regard. The question is not whether the UST's appointments are reviewable, but rather under what standard and by what procedure.

■ The court holds that Bankruptcy Code section 105 may be utilized by bankruptcy courts to review the United States Trustee's committee appointments within certain parameters. Section 105(a) permits the court to "issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

Rule 2020 does not grant the court the right to review the UST's actions; rather, the rule specifies the procedure by which court review, a remedy available under section 105, is carried out. "The court may ... take any action and issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). The court may not invoke § 105(a) to create substantive rights that are not provided by the Code or to constitute a roving commission to do equity. [citation omitted] But § 105(a) may be invoked to assure that the United States trustee does not act arbitrarily and capriciously in performing his administrative tasks mandated by the Code." *In re First RepublicBank Corp.*, 95 B.R. 58, 60 (Bankr.N.D.Tex.1988).

Section 105(a) therefore allows courts to review the UST's appointments as "is necessary or appropriate to carry out the provisions of this title ... or to prevent an abuse of process." Section 105 "gives the court power to review the UST's actions under an abuse of discretion standard of review, presumably on the rationale that the provisions of the chapter cannot be carried out if the UST abuses the discretion that the chapter gives" to the UST. *In re Value Merchants, Inc.*, 202 B.R. 280, 287 (E.D.Wis.1996).

 This does not imply that the court may simply substitute its own judgment for that of the United States Trustee. A mere difference of opinion is not an abuse of process or an insurmountable obstacle to the effective carrying out of a bankruptcy case. Instead, the UST must have abused its discretion when selecting committee members before a court can modify committee membership. "The 'abuse of discretion' standard is hard to define; generally, an abuse of discretion will be found if [a decision-maker] acted in an irrational, arbitrary, or capricious manner, 'clearly contrary to reason and not justified by the evidence.'" Norton Bankruptcy Law and Practice 2d, § 148:37 (discussing "abuse of discretion" standard of review for appeals) (citation omitted); *see, e.g., In re America West Airlines*, 142 B.R. 901, 902 (Bankr.D.Ariz.1992).

Both the UST and the moving party cite *In re Wheeler Technology, Inc.*, 139 B.R. 235 (9th Cir. BAP 1992), for the principle that, as the movant states, "decisions on committee composition are entrusted solely to the United States Trustee and are unreviewable." The moving party nevertheless contends that the court should heed decisions from other circuits which allow some form of court review.

This court does not agree with the parties' assessment of *Wheeler* and believes that its decision here is consistent with *Wheeler*. In *Wheeler*, an unsecured creditor, Hugh Smith/Alexair, purchased assets of the debtor ("WTI") via private sale from a storage facility where WTI had fallen behind on its rent payments. The day after purchasing the assets, Hugh Smith/Alexair and two other creditors filed an involuntary petition against WTI. Hugh Smith/Alexair, which was appointed a member of the creditors' committee, was notified by WTI that WTI wished to exercise its state-law redemption rights. Nevertheless, Hugh Smith/Alexair proceeded to transfer the assets to a third party purchaser in Canada.

When WTI contacted the purchaser, it was told that the goods would be returned if the purchaser were paid the costs incurred in shipping the goods to Canada. This required Hugh Smith/Alexair to provide an accounting. Hugh Smith/Alexair evidently refused to provide the accounting because WTI eventually filed an ex parte

motion for an order to show cause why Hugh Smith/Alexair should not be held in contempt for failure to do so. At the hearing on the order to show cause, the bankruptcy court ordered the goods returned to WTI and removed Hugh Smith/Alexair from the committee pending their return. A follow-up hearing on the issue of the amount of costs and monetary sanctions was scheduled. At that hearing the court awarded monetary sanctions and ordered Hugh Smith/Alexair permanently removed from the creditors' committee for knowingly violating the automatic stay and for failing to comply with the earlier order to return the goods to WTI.

The Ninth Circuit Bankruptcy Appellate Panel held that the bankruptcy court had abused its discretion in removing Hugh Smith/Alexair from the creditors' committee. The BAP reasoned that deletion of section 1102(c) removed from bankruptcy courts the power to modify committee appointments: "The power to appoint and delete members of the Creditors' Committee now resides exclusively with the U.S. Trustee. [citations omitted]" *In re Wheeler*, 139 B.R. at 239.

*Wheeler* was decided under facts that made an analysis of section 1102 unnecessary. Hugh Smith/Alexair was removed from the committee as a sanction for stay violations and contempt of court, not because of any perceived imbalance in representation of claims or interests, and not because of any challenge to the propriety of the United States Trustee's initial appointment of Hugh Smith/Alexair to the committee. Section 1102(c) never gave courts the power to remove committee members as a *sanction*; it only allowed committee modification based on inadequacy of representation. Therefore, even if section 1102(c) were still in effect, it would not have affected the outcome in *Wheeler*.

Whether the court could review the UST's choice of committee membership was not before the *Wheeler* court. The question there was whether the court could remove a creditor from the committee as a sanction for violating the automatic stay. Because appointments to, and removals from, committees are the province of the United States Trustee, the appellate panel held that such a sanction was inappropriate. Review of appointments made by the United States Trustee simply was not the issue in *Wheeler*. The *Wheeler* decision could have been reached without discussing section 1102(c); therefore, the BAP's commentary regarding the deletion of section 1102(c) appears to be dicta.

The appellate panel in *Wheeler* cited two cases in support its decision that deletion of section 1102(c) eliminated bankruptcy courts' ability to remove committee members: *Matter of Gates Engineering Co., Inc.*, 104 B.R. 653 (Bankr.D.Del.1989) and *In re The Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209 (Bankr.S.D.N.Y. 1990).

In *Gates Engineering*, the state of Tennessee had asked the court to allow governmental units to serve on a "warranty claimants committee" which had been appointed by the UST under section 1102. The UST had excluded Tennessee because section 1102(b)(1) requires committees ordinarily to consist of "persons that hold the seven largest claims against the debtor of the kinds represented on such committee" and governmental units were then generally excluded from the definition of "person" under Bankruptcy Code § 101(35)[2]. Because Bankruptcy Code § 101(26)[3] included "state" in the definition of "governmental unit," the court determined that Tennessee could not serve on the committee and denied Tennessee's request to be appointed. "Here, it appears that Tennessee is not functioning as

---

**2.** Now Bankruptcy Code § 101(41). Section 101(41) now contains exceptions pertaining to certain governmental units that did not exist when *Gates Engineering* was decided.

**3.** Now Bankruptcy Code § 101(27).

a governmental unit but has the same interest as other members of the Committee. However, the court cannot under the provisions of § 105 circumvent the unambiguous language of [section 1102, section 101(26), and section 101(35) ] in light of the deletion of subsection (c) in 1986." *Gates Engineering,* 104 B.R. at 654. The court also rejected Tennessee's request to form a separate governmental-entities committee as a "waste of resources" and noted that Tennessee was serving on the established committee as a nonvoting, *ex officio* member. *Id.* at 655.

*Gates Engineering* should not be read to support the view that the court has no authority to review the UST's appointments. In *Matter of Columbia Gas System, Inc.,* 133 B.R. 174 (Bankr.D.Del.1991), the court (and, indeed, the judge) who issued the *Gates Engineering* decision stated:

> [T]he ... issue is whether Congress indicated by the deletion [of section 1102(c) ] that this Court cannot review any part of the U.S. Trustee's selection process. The Court concludes Congress did not so indicate.... [T]he Court's power to change committee membership was removed as a housekeeping matter merely to keep section 1102 internally consistent. The deletion of subsection (c) thus does not address the issue of the Court's power to review the U.S. Trustee's selection process under some standard other than a de novo one.

The case of *In the Matter of Gates Engineering Co.,* 104 B.R. 653 (Bankr.D.Del. 1989) does address this issue. In *Gates,* the movant sought a court order placing it on an official committee. After reviewing section 1102, the court concluded, as here, that it no longer has the power to change committee membership by substituting its judgment for that of the U.S. Trustee. However, the *Gates* court still reviewed the facts and found that the Trustee acted "appropriately" in excluding the movant from the committee. 104 B.R. at 654. The *Gates*

court also observed that the selection of members is within the U.S. Trustee's discretion. *Id.* at 655. Thus *Gates* properly held that a U.S. Trustee's refusal to appoint a creditor was subject to the deferent abuse of discretion standard. While the issue of a remedy was not reached in *Gates,* upon a court finding of an abuse of discretion, a necessary or appropriate order could be entered pursuant to 11 U.S.C. § 105(a). *Columbia Gas,* 133 B.R. at 175–76.

In *Drexel Burnham Lambert,* two entities were appointed joint liquidators of Drexel Burnham Lambert Finance Ltd. in England three days after the debtor filed its chapter 11 petition on February 13, 1990. On February 27, 1990, the UST convened an organizational meeting of creditors, during which various entities were selected to serve on the official committee of unsecured creditors. On March 15, 1990, the liquidators asked the UST to add them to the committee. The UST declined the request, and the liquidators sought an order pursuant to section 1102 directing the UST to appoint them to the unsecured creditors' committee.

The bankruptcy court held that the plain language of section 1102 required inadequate representation on a creditors' committee to be cured, if at all, by the creation of another committee. The liquidators cited several cases as authority for the proposition that section 1102 allows a court to add or delete committee members. The court dismissed the cases cited by the liquidators as "hardly a mandate for court authority to grant the instant motion in light of the current version of section 1102." *Drexel Burnham Lambert,* 118 B.R. at 211.

The *Drexel Burnham Lambert* case, like *Wheeler,* is not at odds with this court's determination that the UST's appointments are reviewable. The court there limited its analysis to section 1102. "[S]ection 1102(a) provides that inadequate representation is to be addressed by a court through the creation of another committee.

That is what Congress wrote. Its words are not to be ignored. Perhaps it should change the statute, perhaps the cost could be ameliorated, or perhaps Congress contemplated relief under other statutes not cited or analyzed by the Liquidators.... But section 1102, relied on by them, cannot be said to afford the relief they seek." *Id.* at 211.

In addition, the court pointed out that the liquidators' motion was "hardly timely," having been filed almost two months after the UST denied their request to be included on the committee. The court also stated: "[p]erhaps most noteworthy of this motion is the failure to plead sufficient facts regarding the one issue the Court is directed to consider by section 1102(a): necessity to assure adequacy of representation." *Id.* at 212.

In the court's view, the removal of section 1102(c) did not render bankruptcy courts unable to review the propriety of the UST's committee appointments. This court also agrees with those courts which have determined that abuse of discretion is the appropriate standard for review of the UST's actions. *See, e.g., In re Value Merchants, Inc.,* 202 B.R. 280, 287 (E.D.Wis. 1996); *Matter of Columbia Gas System, Inc.,* 133 B.R. 174, 175 (Bankr.D.Del.1991); *In re First RepublicBank Corp.,* 95 B.R. 58, 60 (Bankr.N.D.Tex.1988).

**The United States Trustee's Appointment of Four Additional Members to the Committee was Proper.**

Because the court has the ability to review the UST's appointment of creditors' committee members, the court must then determine whether the motion asserts any facts tending to show that appointment of the four additional members to the Committee was improper under the standard set forth above.

Essentially, the motion asserts that all or some of the new members of the Committee are insiders, as that term is defined in the Bankruptcy Code. The UST has agreed that while the Bankruptcy Code does not forbid the appointment of insiders to committees, it is the policy of the Office of the United States Trustee generally not to appoint insiders.

The Bankruptcy Code defines insider at § 101(31) as follows:

"(31) "insider" includes—

 (A) if the debtor is an individual—

 (i) relative of the debtor or of a general partner of the debtor;

 (ii) partnership in which the debtor is a general partner;

 (iii) general partner of the debtor; or

 (iv) corporation of which the debtor is a director, officer, or person in control;

 . . .

 (E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and

 (F) managing agent of the debtor...."

Both Mr. Ray and Mr. Whitenack stated in writing that they are not insiders of Mr. Pierce after having been given a copy of the definition of "insider" by Mr. Rank. Mr. Licciardello, who was one of the three petitioning creditors, filed a response to the motion in which he states that he is not now and never has been an insider or affiliate of Mr. Pierce. He states that he is unclear what managing agent means, but that if it means having authority to make decisions, it certainly does not apply to him. Mr. Niles has filed an opposition to the motion saying he is not an insider.

■ Under the facts before it, the court cannot find that the UST acted in an arbitrary or capricious manner when it appointed the four additional members to the Committee. They all hold substantial claims against the debtor. They all have an interest in getting as large a return as possible for the unsecured creditors.

■ The duties of unsecured creditors' committees are significant in Chapter 11 cases. Committees are empowered to select counsel to represent them. Bankrupt-

cy Code § 1103(a). They may consult with the debtor concerning the administration of the case. They may investigate the acts, conduct, assets, liabilities and financial condition of the debtor; the operation of the debtor's business and the desirability of its continuance; and any other matter relevant to the case or to the formulation of a plan. Bankruptcy Code § 1103(c)(1) and (2). They may participate in formulating a plan and advise the general unsecured creditors of their views on any plan of reorganization. Bankruptcy Code § 1103(c)(3). They may request the appointment of a trustee or an examiner. Bankruptcy Code § 1103(c)(4). Unsecured creditors' committees can play an especially important role in Chapter 11 cases such as this, in which the vast majority of the creditors are unsecured.

 Each member of the Committee—the original three members and the four new members—holds a fiduciary obligation to all the creditors represented by the Committee. *In re First RepublicBank Corp.*, 95 B.R. at 61. Among the duties assumed by Committee members are "fiduciary dut[ies] of undivided loyalty and impartial service to all creditors." *In re County of Orange*, 179 B.R. 195, 202–03 (Bankr.C.D.Cal.1995). If a member of a committee is unwilling or unable, due to conflicts of interest or any other reason, to exercise his or her fiduciary obligations, the UST should take the steps necessary to remove that member from the committee. If, under those circumstances, the UST failed to remove the committee member, such failure would be arbitrary and capricious and subject to review by this court. However, committee members often have varying interests, and creditor disagreement over strategy or objectives on a committee does not by itself amount to the type of conflict of interest mandating removal. *In re First RepublicBank Corp.*, 95 B.R. at 60–61.

Mr. Licciardello's response stating that he is not now and never has been an insider; that he has never had any decision making authority in any Pierce entity; and that his relationship with Mr. Pierce has been adversarial for two years (leading to the filing of the involuntary bankruptcy petition) has satisfied the court that, at this time, Mr. Licciardello does not have a conflict of interest that warrants removal. Both Mr. Whitenack and Mr. Ray have stated that they are not insiders, as has Mr. Niles. The response filed by the UST describes the thoughtful process in which the UST engaged in selecting the Committee. The declaration of Ms. Cury in support of the motion is replete with hearsay and speculation and lacks foundation. The mere fact that the four new committee members had close and cordial relationships with Pierce does not warrant their removal. Presumably each of the creditors had trust and confidence in Mr. Pierce at one time.

The UST has expressed it well: "Tension among creditors is inherent in all cases and is necessary for the case to move forward. Such tension among committee members indicates that the committee is truly representative of the diverse nature of the unsecured creditor body." [4] The court is satisfied at this time that the UST will fulfill her statutory duty to monitor the Committee as it becomes active in this case.

Further, the court agrees with the UST that there is no reason at this time to appoint an additional creditor committee. Whether their claims arise from "investments" or from unpaid debts of other kinds, all the members of the committee have unsecured claims. It may be that as the case progresses, there will be evidence that the interests of the "investors" conflict with those of other unsecured creditors, warranting the appointment of separate committees. There is no such evidence before the court at this time.

4. UST's Response to Motion, p. 9 at lines 8– 11.

For the foregoing reasons, the motion is denied. A separate order has issued.