**In re NORTHEAST DAIRY COOPERATIVE FEDERATION, INC., Debtor.**

**Bankruptcy No. 85–00721.**

United States Bankruptcy Court,
N.D. New York.

Jan. 24, 1986.

Cohen, Weiss & Simon, New York City, for Milk Drivers and Dairy Employees Local 338 and the Industry and Local 338 Pension and Welfare Funds; Ann E. O'Shea, of counsel.

Hancock & Estabrook, Syracuse, N.Y., for debtor; James J. Canfield, of counsel.

Menter, Rudin & Trivelpiece, P.C., Syracuse, N.Y., for Creditors Committee; Peter L. Hubbard, of counsel.

## MEMORANDUM-DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

### FACTS

On August 30, 1985, the Northeast Dairy Cooperative Federation, Inc. ("Nedco"), filed a petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("the Code"). On September 18, 1985, the Hon. Justin J. Mahoney, U.S. Bankruptcy Judge, issued an order appointing eleven creditors to an Official Committee of Unsecured Creditors ("the Committee"). The Committee is comprised of eight trade creditors of Nedco, and three stock-purchase creditors. On October 25, 1985, Milk Drivers and Dairy Employees Union Local 338 ("the Union"), and the Trustees of the Industry and Local 338 Pension and Welfare Funds ("the Trustees"), collectively filed their motion pursuant to § 1102(c) of the Code, seeking appointment, through their attorneys, to the Committee.

The Union is the exclusive collective bargaining representative of approximately 80 employees previously employed by Nedco. Nedco has been a party to an Agreement and Declaration of Trust establishing the fund operated by the Trustees. Nedco is also a party to a collective bargaining agreement with the Union, the terms of which provide for Nedco's contributions to the Trustee's fund.

The Union claims that Nedco owes its members approximately $180,000.00 for unpaid accrued vacation and sick leave, notice and severance pay, and holiday and personal pay.[1] The Trustees claim an amount of $818,408.00.[2] Thus, the Trustees alone represent the seventh largest unsecured creditor of Nedco. In aggregate with the claim of the Union, the fourth largest unsecured claim is represented.

Both Nedco and the existing Committee *oppose* appointment of Union and/or Trustees representatives. They claim the existing Committee is presently manageable, and representative of the various existing claims and interests. They urge that Judge Mahoney specifically requested an uneven number of creditors so as to avoid potential voting deadlocks. They maintain the addition of the Union and/or the Trustees would hamper the Committee's efforts on behalf of all unsecured creditors. Finally, they assert that the movant's claims

1. As of the date of the present motion, the Union's attorneys had filed some 50 employee claims in the average amount of $2,400.00.

2. The Trustees claim at least $48,303.00 in unpaid contributions, and approximately $770,- 105.00 for withdrawal liability due pursuant to the Employee Retirement Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, *et seq.*.

have priority status, making them improper candidates for addition to the Committee.

## DISCUSSION

The Court is charged with the task of appointing a "representative" committee, giving "due consideration to the holders of the largest claims of the represented class." H.R. 595, 95th Cong. 1st Sess. 104 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5963, 6065 ("House Report"). As stated in the House Report, § 1102(c) is "intended ... to afford the court latitude in appointing a committee that is manageable and representative in light of the circumstances of the case." House Report at 402, U.S.Code Cong. & Admin.News 1978, pp. 6357, 6358; *In re Penn-Dixie Indus., Inc.,* 9 B.R. 941, 943 (Bankr.S.D.N.Y.1981). As the Bankruptcy Code provides no standards regarding who may serve on a Committee established pursuant to § 1102, the Court must, of necessity, rely upon its "judicial discretion" in reviewing a request under subsection (c). House Report at 401, U.S. Code Cong. & Admin.News 1978, p. 6357; *In re Kontaratos,* 10 B.R. 370, 372 (Bankr. D.Ma.1981). However, precedent for the Court's resolution of the present matter has been established by the Third Circuit Court of Appeals in *In re Altair Airlines, Inc.,* 727 F.2d 88 (3d Cir.1984) ("*Altair*").

In *Altair,* a union operating as the collective bargaining agent for some eighty-eight pilots (owed in aggregate $676,120 for unpaid wages) requested appointment to an existing committee of unsecured creditors. The priority claim advanced amounted to the second largest unsecured claim against the debtor. The Bankruptcy Court had originally denied the application, holding the Code did not include within its definition of creditor "a duly authorized agent, attorney, or proxy." *Altair* at 89. The District Court affirmed, but grounded its decision upon dicta in *Matter of Schatz Fed. Bearings Co., Inc.,* 5 B.R. 543, 546 (Bankr.S.D.N.Y.1980) that "while a union could serve on a Creditors Committee as a

representative for unpaid pension benefit claims, it could not so serve on behalf of unpaid wage claims." *Altair* at 89.

The Third Circuit Court of Appeals rejected both contentions, noting "[c]ongress has recognized estates and trusts as persons, and thus as entities having claims against debtors. The representative capacity of such fiduciaries is essentially no different, for purposes of participation in a Creditors Committee, than the representative capacity, under federal common law, of a labor organization." *Altair* at 90.

In response to "policy" arguments apparently advanced against appointment of the union, the Court of Appeals stated:

Undoubtedly [the union's] members may be interested in a plan of reorganization which preserves both their jobs and their collective bargaining agreement, while other creditors may be interested in liquidation, or reorganization involving a merger ... Such conflicts of interest are not unusual in reorganizations ... Section 1103(c)(2) contemplates that the Creditors' Committee may "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business *and the desirability of the continuance of such business* ... There is no reason why the voice of the collective bargaining representative should be the one claimant voice excluded from the performance of the statutory role. (emphasis in original).

*Altair,* at 90.

In the present matter, the Court acknowledges Judge Mahoney's desire to avoid voting deadlock by composing an odd-numbered committee. Further, the Court recognizes that the existing Committee has, to date, functioned smoothly and without incident. However, the Court does harbor some concern with the present complexion of the Committee, although it will not, *sua sponte,* undertake removal of members.[3] Clearly, a Creditors Committee

---

3. The Court's concern lies with present members of the Committee who arguably have status

as either direct competitors of Nedco, or as "insiders" of the Debtor. While there has been

occupies a unique position in a reorganization as it . . .

> is not merely a conduit through whom the debtor speaks to and negotiates with creditors generally.... [I]t is purposely intended to represent the necessarily different interests and concerns of creditors it represents. It must necessarily be adversarial in a sense, though its relationship with the debtor may be supportive and friendly.
>
> There is simply no other entity established by the Code to guard those interests. The committee as the sum of its members is not intended to be merely an arbiter but a partisan which will aid, assist, and monitor the debtor pursuant to its own self-interest.

*In re Daig Corp.*, 17 B.R. 41, 43 (Bankr.D. Minn.1981).

Certainly, direct representation of every creditor of Nedco is impossible, yet in this regard the Court fails to appreciate how additions to the present Committee will hamper efforts on behalf of all unsecured creditors. Indeed, as intimated by the *Altair* court and others, inclusion of entities with differing reorganizational aspirations often are of benefit to the debtor. *Altair* at 90–91; see also *In re M.H. Corp*, 30 B.R. 266, 267 (Bankr.S.D.Ohio W.D.1983).

▇▇▇ The burden of proving that an existing committee is not representative is upon the movant seeking appointment, and the Court determines in this regard that the Union and Trustees have adequately met their obligation of proof.[4] The Committee is not representative as presently established, for interests critical to the formulation of a successful plan are unrepresented. The *Altair* court noted that various labor organizations were then sitting on creditors' committees in bankruptcy proceedings throughout the country,[5] and the Court will not deny representation upon the bare assertion that some disruption of efforts would ensue. In addition, the Court will not abide the decision of *In re Allied Delivery Sys. Co.*, 52 B.R. 85 (Bankr.N.D. Ohio E.D.1985). That case is factually dissimilar from the present, as the union seeking appointment therein was admittedly and openly hostile to the debtor, involved as it were in an unfair labor practice proceeding before the National Labor Relations Board.

While the present movants have collectively requested appointment of one common representative, the Court believes their interests sufficiently diverse to justify separate representation. While the Union's wage claims are admittedly entitled to a priority, they are, nonetheless, general unsecured claims with only limited priority status. Also, the Trustees' pension claims are similarly of limited priority, with the bulk of their claim (withdrawal liability) afforded no priority whatsoever.

Consequently, in keeping with legislative mandate, Judge Mahoney's lead, and the particular facts presented, the Court will appoint a representative of the Union, as well as of the Trustees, to the existing Committee. This action will preserve Nedco's and the existing Committees' expressed desire for a deadlock-free Committee, and will more importantly provide representation that has to date been absent. There has been no showing that additional members will have deleterious impact upon the workings of the Committee, and the Court is confident that the Committee, as

no allegation or evidence of unseemly conduct, and the Court does not suggest the same, the Court is cognizant of decisions wherein those of similar ilk were removed from existing creditors' committee upon showings of impropriety.

4. The Court notes that at least one Bankruptcy Court in the Second Circuit has held it has the plenary power to enlarge a creditors' committee, even though the action is unnecessary to assure adequate representation of creditors. *In re AKF Foods, Inc.*, 36 B.R. 288 (Bankr.E.D.N.Y.

1984) (Goetz, Bankruptcy Judge). (Court's powers under § 1102(a) include those powers granted to U.S. Trustees under § 151102.) This holding is not specifically adopted, as the movants have met their burden of proof to the Court's satisfaction.

5. The Third Circuit Court of Appeals noted at least seven other instances of organized labor representation upon committees. *Altair* at 89, n. 2.

newly constructed, will have even greater resources at its disposal for effective operation.

Thus, based upon the foregoing, it is ORDERED:

1) That a representative of Milk Drivers and Dairy Employees Union Local 338, be added to the existing Committee of Unsecured Creditors herein.

2) That a representative of the Trustees of the Industry and Local 338 Pension and Welfare Funds, be added to the existing Committee of Unsecured Creditors herein.