In re VICTORY MARKETS,
INC., Debtor.

Bankruptcy No. 95–63366.

United States Bankruptcy Court,
N.D. New York.

Oct. 13, 1995.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey Dove, of counsel), Syracuse, New York, for Debtor.

Hancock & Estabrook, LLP (Stephen Donato, of counsel), Syracuse, New York, for Mellon Bank as Trustee for First Plaza Group Trust.

Kirkland & Ellis (David L. Eaton, of counsel), Chicago, Illinois, for Mellon Bank as Trustee for First Plaza Group Trust.

Office of U.S. Trustee (Kim Lefebvre, Michael Collins, of counsel), Utica, New York.

Harter, Secrest & Emery (John R. Weider, of counsel), Rochester, New York, for Unsecured Creditors Committee.

Coughlin & Gerhart (Henry J. Rode, II, of counsel), Binghamton, New York, for Crowley Foods.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

This matter comes before the Court by virtue of an Order dated October 6, 1995, shortening time for an expedited hearing on

the motion of Mellon Bank, N.A., as Trustee for First Plaza Group Trust ("First Plaza"), to direct the Office of the United States Trustee ("UST") to appoint First Plaza to the Official Committee of Unsecured Creditors. First Plaza files its motion pursuant to § 105(a) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") and Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 2020.

Argument on the motion was heard on October 10, 1995, at the Court's regular motion term in Binghamton, New York and the matter was submitted as of that date.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A).

### FACTS

On September 20, 1995, Victory Markets Inc. ("Victory Markets") and five of its wholly-owned subsidiaries [1] (collectively, "Debtor") filed for relief under Chapter 11 of the Code. Since the commencement of the case, Debtor has continued in the operation of its business as debtor-in-possession pursuant to Code §§ 1107 and 1108. Debtor operates approximately 50 grocery stores throughout the northern and central New York State regions under the trade name "Great American Food Stores."

First Plaza and the UST agree that Debtor's unsecured creditors generally fall into three categories: (1) trade creditors, (2) holders of subordinated bonds and (3) First Plaza. The UST alleges that the trade debt is approximately $20,000,000, the subordinated bond debt is approximately $60,000,000 and First Plaza's debt is approximately $20,000,000. See UST Memorandum of Law in Support of Objection to First Plaza's Motion ("UST Memo of Law") at 19. First Plaza contends that it is the second largest unsecured claimant in Debtor's case, behind only the subordinated bond holders. See First Plaza Memorandum in Support of Motion ("First Plaza Memo of Law") at 3. First Plaza also alleges that by virtue of a contractual subordination agreement, "First Plaza is entitled to payment in full ... before any distribution can be made on account of the Subordinated [bond] claims." Id.

Allegedly, First Plaza's unsecured claim of approximately $20,000,000 is evidenced by certain Loan Agreements, dated August 14, 1992 and January 28, 1994, and certain 12.5% and 14.5% Senior Subordinated Notes due 2002. Id. at 1–2. First Plaza admits that contemporaneous with its extension of loans to Debtor, First Plaza also acquired shares of common and preferred stock and warrants in Victory Holdings, Corp. ("VHC"). Id. at 2. VHC is Victory Market's parent corporation and holds all of Victory Market's equity security. VHC has not filed for relief under the Code.

First Plaza owns 37% of VHC's common stock, assuming conversion of First Plaza's preferred stock to common stock and the exercise of its warrants. See First Plaza's Motion Seeking Appointment to Committee ("First Plaza Motion") at 3. First Plaza alleges that Centre Capital Investors, L.P. owns 47.43% of VHC common stock and management owns the remaining 15.83% of VHC common stock. See First Plaza Memo of Law at 2.

On or about October 6, 1995, the UST appointed an Official Committee of Unsecured Creditors ("Committee") comprised of nine members.[2] The UST submits that the composition of the Committee is "such that the bondholders represent 55.5% of the Committee members and the non-bond creditors

---

1. Victory Market's wholly-owned subsidiaries that filed for relief under Chapter 11 are: Dunco Realty & Equipment Corp., VM Custom Fixtures, Inc., Norwich Recycling Corp., Food King, Inc., and Geddes St. Plaza Assoc., Inc. On September 20, 1995, Victory Market's affiliate, New Almacs Inc., and its wholly owned subsidiary, Ocean Equities Corp., also filed petitions under Chapter 11. On October 10, 1995, pursuant to Fed. R.Bankr.P. 1015(b)(4), the Court orally granted motions to jointly administer Victory Markets with its wholly-owned subsidiaries and New Almacs Inc. with its wholly-owned subsidiary.

2. On October 6, 1995, the UST also appointed an Official Committee of Unsecured Creditors in the New Almacs Inc. case.

represent 44.4% of the Committee." *See* UST Memo of Law at 19. The UST did not appoint First Plaza to the Committee and, as yet, has not formed any additional committees.

On October 6, 1995, immediately following the UST's appointment of the Committee, First Plaza brought an application pursuant to Fed.R.Bankr.P. 9006(c)(1) to shorten time for an expedited hearing on the instant motion. The Court, by Order dated October 6, 1995, granted First Plaza's application and oral argument was thereafter heard on October 10, 1995. At oral argument, pursuant to Code § 1109(b), the Court afforded Debtor an opportunity to be heard in support of First Plaza and Harter, Secrest & Emery, Esqs., co-counsel to the Committee, to be heard in support of the UST.

## ARGUMENTS

First Plaza contends that pursuant to Code § 105(a) and Fed.R.Bankr.P. 2020 the Court has the power to review the UST's decisions on Committee appointments under a *de novo* or abuse of discretion standard. *See* First Plaza Motion at 5–6. First Plaza argues that Code § 1102(a)(2) and (b)(1) require that the creditors' committee adequately represent the unsecured creditor body. *Id.* at 6. First Plaza contends that a review of the UST's Committee appointments reveals that the Committee does not adequately represent Debtor's unsecured claimants. *Id.* at 7. As such, First Plaza requests the Court to direct the UST to appoint it to the Committee. *Id.*

In response, the UST argues that the appointment of creditors to the Committee is left to the UST's full discretion and is not reviewable by the Court. *See* UST's Objection to Motion at ¶ 5(a). The UST also argues that the Committee's present composition adequately represents the entire unsecured creditor body. *See* UST Memo of Law at 19–20.

In the alternative, the UST submits that if its actions are reviewable by the Court, an abuse of discretion standard must be applied. *See* UST's Objection to Motion at ¶ 5(b). The UST contends that its decision not to appoint First Plaza to the Committee was based on a determination that First Plaza

has an actual conflict of interest by virtue of its significant ownership interest in Victory Market's parent corporation, VHC. *See* UST Memo of Law at 1. As such, the UST contends that it did not abuse its discretion by not appointing First Plaza to the Committee.

## DISCUSSION

■ After due consideration of the arguments and mindful of the express statutory language, this Court denies First Plaza's request to be appointed to the Committee. The Court concludes that the specific and important statutory constraints of Code § 1102 precludes it from adding First Plaza to the Committee.

A review of the legislative history and the historical antecedents of Code § 1102 reveals Congress' struggle to determine where to place the administrative responsibility of appointing and monitoring creditors' committees. Under the Bankruptcy Act of 1898, creditors themselves selected the creditors' committee. *See e.g.* Bankruptcy Act § 209, 11 U.S.C. § 609 (1976) (repealed 1978). However, with the adoption of the Code in 1978, Congress shifted the authority to appoint creditors' committees in most districts to the bankruptcy courts. *See* Code § 1102(a)(1) (1978) (amended by Bankruptcy Judges, United States Trustees, and Family Farmer Act of 1986, Pub.L. No. 95–554 ("1986 Act")). In addition, Code § 1102(c) granted courts the authority, on the request of a party in interest, to alter the composition of a creditors' committee if the committee did not adequately represent the unsecured creditors. *See* Code § 1102(c) (1978) (repealed 1986); *see e.g. In re Northeast Dairy Co–op. Federation,* 59 B.R. 531 (Bankr.N.D.N.Y. 1986) (relying on Code § 1102(c) to add creditors to committee).

Congress also adopted in 1978 a U.S. Trustee "pilot" program for certain districts. *See* 28 U.S.C. § 581 (1978). As to those districts, the U.S. Trustee had authority to appoint Chapter 11 creditors' committees. *See* Code § 151102(a) (1978) (repealed 1986). After the adoption of the Code in 1978, Congress recognized that requiring courts to

**4**

appoint creditors' committees was an administrative burden which should be shifted entirely to the U.S. Trustee. *See* H.R.Rep. No. 764, 99th Cong., 2d Sess. 18 (1986), U.S.Code Cong. & Admin. News 1986, p. 5227. It also became apparent that by shifting the responsibility of appointing creditors' committees to the U.S. Trustee, Congress could avoid any questions as to the court's neutrality in the bankruptcy process when deciding disputes between its hand-picked committee and other parties in interest. *Id.; see In re Sharon Steel Corp.,* 100 B.R. 767, 773 (Bankr.W.D.Pa.1989) (citing legislative history).

Thus, in 1986 Congress repealed former Code § 151102, applicable in pilot U.S. Trustee districts, and transferred its provisions to Code § 1102(a)(1) and (2). *See In re Sharon Steel Corp., supra,* 100 B.R. at 772 (citing to 1986 Act). In addition, the 1986 Act repealed Code § 1102(c) which had expressly granted courts the authority to add to and delete from the creditors' committee. *See In re McLean Industries, Inc.,* 70 B.R. 852, 856 (Bankr.S.D.N.Y.1987). The U.S. Trustee, pursuant to the 1986 Act, was endowed with the authority to appoint a creditors' committee and the courts were relieved of their authority to affect the composition of the same upon a finding of inadequate representation.

By repealing Code § 1102(c), however, Congress left a statutory vacuum whereby courts, on a finding of inadequate representation, can no longer change the composition of a creditors' committee appointed by the U.S. Trustee. *See In re Drexel Burnham Lambert Group, Inc.,* 118 B.R. 209, 210 (Bankr. S.D.N.Y.1990); *In re Wheeler Technology, Inc.,* 139 B.R. 235, 239 (9th Cir. BAP 1992) (reversing and vacating bankruptcy court's order removing creditor from committee); *Matter of Gates Engineering Co., Inc.,* 104 B.R. 653, 654 (Bankr.D.Del.1989) ("Subsequent to 1986 … court no longer had authority over the composition of committees …"); *In re Hills Stores Co.,* 137 B.R. 4, 8 (Bankr.S.D.N.Y.1992); 4 Collier on Bankruptcy ¶ 1102.01 at 1102–18 (L.P. King 15th

ed. 1995) ("Courts may not direct a United States trustee to investigate the qualifications of committee members nor may a court order the appointment of a creditor to a committee.").

In *Drexel Burnham,* former Bankruptcy Judge Howard C. Buschman, III was confronted with a request similar to that made by First Plaza, namely, a creditor requested appointment to the creditors' committee. *See In re Drexel Burnham Lambert Group, Inc., supra,* 118 B.R. at 210. The *Drexel Burnham* court pointed out that in 1986 Congress repealed Code § 1102(c), which had expressly enabled the bankruptcy court to alter the composition of a creditors' committee. *Id.* Judge Buschman also pointed out that Code § 1102(a) only allows the court to "order the appointment of additional committees … if necessary to assure adequate representation." *Id.* at 211. Judge Buschman appropriately concluded that upon a determination of inadequate representation, the court's authority is now limited to ordering the appointment of another committee. *Id.*

Nevertheless, there is case authority that holds that Code § 105(a) gives the court the power to order the U.S. Trustee to appoint a creditor to a creditors' committee. *See e.g. In re Plabell Rubber Products,* 140 B.R. 179 (Bankr.N.D.Ohio 1992) (holding that court has power under Code § 105(a) to add labor union to committee); *Matter of Columbia Gas System, Inc.,* 133 B.R. 174 (Bankr.D.Del. 1991) (court could review for abuse of discretion U.S. Trustee's refusal to appoint creditor and could order appropriate relief pursuant to Code § 105); *In re First RepublicBank Corp.,* 95 B.R. 58 (Bankr.N.D.Tex.1988).

■■■■ This Court, however, rejects the above cited authority as it is in derogation of the express statutory language of Code § 1102.[3] The task of interpreting a statute begins "with the language of the statute itself." *See United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Where the statute's language is plain, "'the sole function of the courts is to enforce it according to its

---

**3.** For additional criticism of cases supporting the proposition that courts may alter committee

membership, see *In re Drexel Burnham Lambert Group, Inc., supra,* 118 B.R. at 210–211.

terms.'" *Id.* (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

■ As noted in *Drexel Burnham*, the plain language of Code § 1102(a)(2) provides that "the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." The juxtaposition of this language with the repeal of Code § 1102(c) clearly reveals Congress' intent to shift to the U.S. Trustee the administrative responsibility of appointing committees and monitoring the same. *See In re McLean Industries, Inc., supra*, 70 B.R. at 856 ("... § 1102(a) was amended to place appointive power in the hands of the U.S. trustee ... [and] consistent with lodging all appointive power with the U.S. trustees, § 1102(c) was repealed."); *see also* 28 U.S.C. § 586(a)(3)(E) (U.S. Trustee's duties include "monitoring creditors' committees appointed under chapter 11."). Therefore, in light of the repeal of Code § 1102(c) and the plain language of Code § 1102(a), the Court concludes that it does not have the authority to add creditors to a committee appointed by the U.S. Trustee. *See In re Drexel Burnham Lambert Group, Inc., supra*, 118 B.R. at 211; *Matter of Gates Engineering Co., Inc., supra*, 104 B.R. at 654; *In re Wheeler Technology, Inc., supra*, 139 B.R. at 241. First Plaza's only substantive remedy, then, is to request the appointment of an additional committee. *See* Code § 1102(a)(2).

■ Although Code § 105(a) grants courts general equity powers, this Court has consistently held that they "can only be exercised within the confines of the Bankruptcy Code." *See In re Bisignani*, 126 B.R. 418, 422 (Bankr.N.D.N.Y.1988) (citations omitted). The equitable powers embodied in Code § 105(a) are not to be construed as a license to disregard the clear language and meaning of the bankruptcy statute and rules. *See In re Boyer*, 108 B.R. 19, 24 (Bankr.N.D.N.Y. 1988) (citations omitted). Therefore, the Court concludes that First Plaza's invocation of the Court's equity powers is unavailing beside the plain language of Code § 1102(a) and Congress' clear intent. *See Matter of* *Gates Engineering Co., Inc., supra*, 104 B.R. at 654 (Code § 105(a) cannot be used to circumvent the unambiguous language of the Code); *In re Wheeler Technology, Inc., supra*, 139 B.R. at 241.

■ The Court notes that the Advisory Committee Note to Fed.R.Bankr.P. 2020 gives courts broad authority for "judicial review of the United States trustee's acts or failure to act in connection with the administration of the case." Thus, a party in interest may use Fed.R.Bankr.P. 2020 to challenge the U.S. Trustee's actions with respect to the appointment of a creditors' committee. *See* Advisory Committee Note to Fed. R.Bankr.P. 2007 ("Although this rule [2007] deals only with judicial review of the appointment of prepetition committees, it does not preclude judicial review under Rule 2020 regarding the appointment of other committees.").

However, Fed.R.Bankr.P. 2020 is merely a procedural device to challenge the U.S. Trustee's actions and does not confer any substantive rights. Indeed, it is well established that the bankruptcy "rules shall not abridge, enlarge, or modify any substantive right." *See* 28 U.S.C. § 2075; *see also In re Smith*, 103 B.R. 392, 394 (Bankr.N.D.N.Y. 1988) (Chapter 7 case); *Matter of Waindel*, 65 F.3d 1307 (5th Cir.1995). Thus, for present purposes, First Plaza's substantive rights are limited to the language of Code § 1102 and cannot be supplemented by Fed. R.Bankr.P. 2020 and the invocation of Code § 105(a). *Compare Matter of Columbia Gas Systems, Inc., supra*, 133 B.R. at 176.

Finally, the Court acknowledges that First Plaza makes a compelling policy argument that bankruptcy courts should have the power to require the Office of the United States Trustee, an administrative agency, to appoint a creditor to a creditors' committee. *See* Oral Argument at Court's Regular Motion Term in Binghamton, New York on October 10, 1995. Nevertheless, the Court is bound to respect the constitutional position of the legislature and the constitutional procedures for the enactment of legislation. *See generally* 2A Sutherland, Statutes and Statutory Construction, §§ 47.35–.38 (4 ed.1972).

Thus, given the clear language of the Code, the Court is unwilling to engage in judicial legislation and rewrite provisions that it determines to be unsound.

The Court concludes that pursuant to the language of Code § 1102(a) it does not have the statutory authority to grant First Plaza's request, namely, an order appointing First Plaza to the Committee. As the Court cannot grant the relief requested, it is unnecessary to address First Plaza's allegation that the present composition of the Committee does not adequately represent the unsecured creditor body. Similarly, the Court will not address whether First Plaza is an insider or whether there is an actual conflict of interest.

For the reasons set forth herein, it is

ORDERED that First Plaza's motion to direct the United States Trustee to appoint it to the Official Committee of Unsecured Creditors pursuant to Code § 105(a) and Fed.R.Bankr.P. 2020 is denied.