**In re VALUE MERCHANTS, INC., Debtor.**

**In re EVERYTHING'S A DOLLAR, INC., Debtor.**

Nos. 93–26733–JES, 93–26734–JES *. Appeal No. 94–C–218.

United States District Court, E.D. Wisconsin.

Nov. 13, 1996.

* Jointly Administered Cases

John R. Byrnes, United States Department of Justice, Office of the Trustee, Milwaukee, WI, for Appellant.

Kristine H. Cleary, Michael, Best & Friedrich, Milwaukee, WI, Matthew E. Wilkins, Coffield, Ungaretti & Harris, Chicago, IL, for Appellees.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on the appeal of the United States Trustee from a decision of the United States Bankruptcy

Court, ordering that Firstar Trust Company and First Bank (N.A.), indenture trustees of the debtor (hereinafter "the indenture trustees"), be appointed as full voting members of the unsecured creditors' committee in the bankruptcy case of *In re Value Merchants, Inc.* This appeal raises the question whether, and in what circumstances, the Bankruptcy Court may review and override a decision on the part of the United States Trustee not to include particular parties as full members of an unsecured creditors' committee in a Chapter 11 case. For the reasons discussed below, the decision of the Bankruptcy court is affirmed on the grounds that the United States Trustee abused his discretion in failing to appoint appellees to the committee as voting members.

## I. Background

On December 13, 1993, Value Merchants, Inc. (hereinafter "VMI" or "the debtor"), filed a voluntary Chapter 11 petition in the Bankruptcy Court of this district. On December 20, 1993, the United States Trustee (hereinafter "the UST") held a meeting of the general unsecured creditors of VMI the purpose of which was to form an unsecured creditor's committee (hereinafter "the committee"). Prior to the meeting, the UST had been in contact with numerous creditors who expressed interest in serving on the committee. Among these were trade creditors, an equipment financier, and appellees Firstar and First Bank.

· Firstar and First Bank are indenture trustees of the debtor. They are named as such in two indenture agreements dating from 1992 and 1993, respectively, pursuant to which VMI issued subordinated debentures with aggregate par values on the order of $25 million. There are currently about 160 holders of record of these bonds. A number of these holders of record are retail invest-

ment firms whose customers hold a substantial number of the bonds in street name.[1] Thus, the actual number of beneficial owners of VMI bonds is significantly greater than 160. These owners are apparently scattered across the country. The aggregate claims of the bondholders against the debtor exceed $15 million, split roughly equally between the two indentures. These claims—or, more precisely, blocs of claims [2]—dwarf the largest individual unsecured claim, namely that of an equipment financier in the amount of $2.7 million.

At the organizational meeting on December 20, 1993, Firstar and First Bank tried without success to persuade the UST to appoint them to the committee as full voting members. Instead, the UST appointed a committee of five consisting of VMI's trade creditors and the above-mentioned equipment financier. Firstar and First Bank were not entirely excluded, however, as the UST appointed them "ex-officio" non-voting members of the committee; this was done to allow the appellees to participate in discussions and receive information in the same expeditious manner as the voting members. The UST declined to appoint a separate committee composed of the indenture trustees. Nor was a separate committee of bondholders proposed.

On December 20, 1993, Firstar and First Bank made an emergency oral motion to the Bankruptcy Court seeking to overturn the UST's refusal to grant them voting status on the committee. At that hearing, the UST expressed his opinion that a committee of unsecured creditors should be composed only of individual creditors with a direct stake in the affairs of the debtor, and that indenture trustees do not qualify in this regard because "they don't have a claim." Transcript dated

---

**1.** Securities held "in street name" are held in the name of a broker instead of the name of the true owner. This arrangement is used for convenience or to shield the identity of the true owner. *See, Black's Law Dictionary* 1421–22 (6th ed. 1990).

**2.** See, Brief of First Bank (N.A.), Appellee, p. 6. Firstar and First Bank, in their capacity as indenture trustees, are both empowered and obligated to represent the interests of the bondhold-

ers who bought bonds issued under either of the indenture agreements. This encompasses the authority to file legal claims on behalf of their respective bondholders. It is an open question, however—one which is addressed below—whether the indenture trustees are properly characterized as "creditors," or merely "representatives of creditors," or, for that matter, whether the distinction has any proper bearing on the appointment of creditor committees in bankruptcy cases.

December 20, 1993, p. 9. The bankruptcy court differed sharply on this point, stating that indenture trustees have "a perfect right to serve on a creditors committee." *Id.* at 10. The court then proceeded to grant the indenture trustees temporary voting status pending a future hearing on the matter, which took place on December 29, 1993.

At the December 29th hearing, representatives of the indenture trustees were heard regarding the substance of their obligations under their respective indenture agreements. The UST then explained and elaborated his reasons why he had not appointed the indenture trustees as full voting members of the committee. The UST reiterated that his primary reason for not doing so was that the indenture trustees lack a direct financial stake large enough to warrant membership. The UST also stated that a potential for conflict exists when an indenture trustee serves on a creditors' committee, due to indenture trustees' fiduciary obligations to their bondholders, which may impede them in fulfilling the parallel duty of committee members to serve interests of the unsecured creditor group as a whole. For these reasons, the UST was of the opinion that indenture trustees should not serve on creditors' committees. The UST testified further that he was not averse to the appointment of individual bondholders, but apparently none have stepped forward to serve in this case.

On January 21, 1994, the bankruptcy court issued a decision from the bench granting the motion of Firstar and First Bank. In issuing his decision, the court drew the following conclusions: First, that the indenture trustees are creditors and are therefore eligible to serve on the committee. Second, that after UST appoints the committee, the Bankruptcy Court has authority to review the composi-

tion of the committee *de novo* and, upon finding inadequate representation, may order that the indenture trustees be appointed as full members of such committee. Third, the court made the alternative holding that the UST acted arbitrarily and capriciously in refusing to appoint the indenture trustees to the committee. For these reasons, the court held that its earlier order appointing the indenture trustees as full members of the committee would remain in full force and effect. The UST filed a timely notice of appeal to this court on January 31, 1994.

## II. Discussion

This appeal raises three issues: first, whether the Bankruptcy Court was correct in holding that it has the authority to review the composition of the creditors' committee under a *de novo* standard and order that particular creditors shall serve as (full) members of the committee; second, whether the Bankruptcy Court was correct in holding in the alternative that it could review and modify the composition of the creditors committee under an "arbitrary and capricious" standard; third, whether the Bankruptcy Court was correct in its finding that the UST's refusal to appoint the indenture trustees to the committee was arbitrary and capricious. The first and second issues are questions of law subject to de novo review by this Court. Fed.R.Bankr.P. 7052. The third issue involves a factual finding which may be overturned only if clearly erroneous. Fed. R.Bankr.P. 8013.

### A.

 The first question is whether the Bankruptcy Court may review *de novo* the adequacy of representation of a creditors' committee chosen by the UST and appoint specific additional members if the court sees fit.[3] Resolution of this issue requires inter-

---

3. Though the issue is not expressly briefed, the appellees generally assume that to order the change in voting status of the indenture trustees is tantamount to adding hitherto unappointed creditors to the committee. The UST operates on the same assumption, but suggests that the appellees' ex-officio status diminishes the force of arguments in favor of the bankruptcy court's holding. In light of the result reached below and affirmed here, the Court expresses no opinion whether ex-officio status is enough like full membership to diminish the merit of a party's

claim that it has been denied representation. *Cf. In re Gates Engineering,* 104 B.R. 653, 654 (Bankr.D.Del.1989) ("the right to vote as a committee member may or may not be of prime importance"). One commentator has noted an increasing tendency of indenture trustees to eschew ex-officio status in favor of full membership, and the Court assumes for present purposes that voting is a key aspect of membership on a creditors' committee. *See,* Steven E. Sherman, *Overview of Bankruptcy From the Inden-*

pretation of 11 U.S.C. § 1102 and cases arising thereunder. Section 1102 provides for, and in some measure regulates, the appointment of creditors' and equity security holders' committees. *See,* 11 U.S.C. § 1102 (1996). The pertinent parts of the text are set out in the margin.[4] For the reasons cited below, the Court finds that once the issue of adequate representation is raised, the Bankruptcy Court has the authority to review the UST's committee choices *de novo,* but that upon finding deficient representation the Bankruptcy Court's only remedial option is to order the UST to appoint one or more additional creditors' committees.

In 1986, § 1102 was modified by the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act. The Act implemented a nationwide expansion of the United States Trustee system, which had started as an experiment in certain pilot districts under the 1978 Bankruptcy Code. King, 5 Collier on Bankruptcy ¶ 1102.01 (15th ed. 1996) (citing Pub.L. No. 99–554, § 231 (1986)); H.R.Rep. No. 764, 99th Cong., 2d Sess. 18 (1986). These amendments (hereinafter "the 1986 amendments") sought to bolster confidence in the U.S. bankruptcy system by separating, in all but two states, administrative and judicial functions which had previously been performed by bankruptcy courts in non-pilot districts. The administrative functions—including responsibility for the appointment of creditor and equity holders' committees in Chapter 11 cases—were transferred to USTs in all federal judicial districts except Alabama and North Car-

olina.[5] 5 Collier on Bankruptcy at ¶ 1102.01[1].

For present purposes, the most notable aspect of the 1986 amendments was the repeal of former § 1102(c). *See,* Pub.L. 99–554, § 221(2) (striking out 11 U.S.C. § 1102(c) (1978)). Subsection (c) had provided: "On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the kinds of claims or interests to be represented." *Id.* There is currently a division in the law as to the meaning and effect of the elimination of subsection (c). As this appears to be a matter of first impression in the Seventh Circuit, the Court must evaluate and choose between conflicting lines of cases.

Argument and cases cited by the indenture trustees and by the bankruptcy court support *de novo* review and the unfettered modification by the court of the UST's chosen committee(s). *See, In re Texaco,* 79 B.R. 560, 566 (Bankr.S.D.N.Y.1987); *In re Public Service Company of New Hampshire,* 89 B.R. 1014, 1021 (Bankr.D.N.H.1988). Argument and cases cited by the UST support the view that a court reviewing the UST's committee choices under § 1102 may not modify a committee chosen by the UST but rather may redress inadequate representation only by ordering the appointment of one or more additional committees. *See, In re McLean Industries,* 70 B.R. 852, 856 n. 2, 860 (Bankr.

---

*ture Trustee's Position,* 399 PLI/Real 337, 352 (1994).

4. In pertinent part, § 1102 provides:

(a)(1) [A]s soon as practical after the order for relief under Chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors ... as the United States trustee deems appropriate.

(2) On request of a party in interest, the [bankruptcy] court may order the appointment of additional committees of creditors ...

(b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the

members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

5. The creation and expansion of the UST program under the 1978 Code and 1986 amendments sought to render bankruptcy judges "free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to impartial judicial determinations." H.R.Rep. 764, 99th Cong. at 18. Delegation of administrative functions was intended to eliminate the appearance of favoritism and impropriety that was said to arise under the old system, such as when bankruptcy judges appointed private trustees who then appeared before the court in connection with the case. *Id.*

S.D.N.Y.1987) [6]; *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 210 (Bankr.S.D.N.Y.1990); *In re Hills Stores Co.*, 137 B.R. 4, 8 (Bankr.S.D.N.Y.1992); *In re Wheeler Technology, Inc.*, 139 B.R. 235, 238–39 (9th Cir. BAP 1992). The issue of the court's ability to modify creditor committees is thus a widely contested one, and commentators have noted that this aspect of the law governing creditor committees is in considerable disarray. *See, e.g.*, Kenneth N. Klee and K. John Shaffer, "Creditors Committees Under Chapter 11 of the Bankruptcy Code," 44 *S.C.L.Rev.* 995, 1032 (1993).

In this case, the bankruptcy court took the position that the repeal in 1986 of the express authority to modify the composition of creditors' committees did not alter the court's authority to do exactly that whenever a party contests the UST's choices. In other words, the UST's administrative task ends when he is done choosing the committee and the resolution of disputes as to the adequacy of representation on the committee are judicial tasks for the court. This Court agrees that "all judicial determinations ... remain with the judiciary," but that does not foreclose inquiry into the bankruptcy court's authority under § 1102 and in particular the standard of review to be applied.

The bankruptcy court conflated the administrative/judicial distinction with the standard of review issue by quoting with approval the following language from *In re Crosby*, 93 B.R. 798, 802 (Bankr.S.D.Ga.1988): "The United States Trustee is an independent agency and comes to court with no special status or presumption that the judiciary views its recommendations or positions with any greater authority than any other litigant." This is a conclusory statement, unsupported in the *Crosby* opinion by citation to authority. While the UST is an "independent" administrative agency in the sense that individual USTs serve for fixed terms and are removable only for cause, *see Humphrey's Executor v. United States*, 295 U.S. 602, 625, 55 S.Ct. 869, 872, 79 L.Ed. 1611 (1935), these characteristics do not establish that the UST—or any other independent agency—comes to court without presumptions in his or its favor. The answer to that question depends, rather, on the language of the statutes under which the agency and the reviewing court act and the nature of the issue being litigated.[7]

The Bankruptcy Code ("the Code") entrusts certain tasks to the UST, the performance of which necessarily requires the exercise of discretion. These are "administrative" rather than executive functions. Section 1102, in turn, permits interested parties to seek "judicial" review of the UST's acts under that section in order to ensure adequate representation.[8] Courts have uniformly held that such review is *de novo*. *In re Sharon Steel Corporation*, 100 B.R. 767, 776 (Bankr.W.D.Pa.1989); *McLean*, 70 B.R. at 856–59; *Texaco*, 79 B.R. at 566. Thus, the bankruptcy court is free to differ with the UST on the adequacy of representation issue. If—and only if—the court does so differ with the UST does the issue of an appropriate "judicial" remedy

---

**6.** In their brief, First Bank incorrectly cites *In re McLean* as authority for their position. See, *In re McLean*, 70 B.R. at 860 ("If representation is not adequate, it would appear that ... representation [on an additional committee] is necessary since Congress, in repealing § 1102(c), ended the court's ability to afford alternative relief through change of committee membership.").

**7.** In cases where an agency administers a statutory scheme in which Congress has left gaps for the agency to fill via the promulgation of regulations, a reviewing court is obliged to defer to the agency's interpretation of the statutory scheme, if reasonable. *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). Moreover, under § 706 of the Administrative Procedure Act, a reviewing court must defer to

an administrative agency's findings of fact unless clearly erroneous. *See*, 5 U.S.C. § 706 (1996). In these respects at least, an "independent" agency often comes into Court with greater authority than other litigants.

**8.** The appellees cite Rule 2020 of the Federal Rules of Bankruptcy Procedure, as evidence that the bankruptcy court has plenary authority to review the acts or omissions of the UST. The UST argues—and the Court agrees—that Rule 2020 specifies a procedure for review in cases where the UST's actions are challenged, but does not specify a standard of review. *Accord, In re Victory Markets, Inc.*, 196 B.R. 1, 5 (Bankr. N.D.N.Y.1995). The standard must be derived from the substantive section of the code that gives the court authority to engage in review.

arise. *In the Matter of the Columbia Gas System,* 133 B.R. 174, 175 (Bankr.D.Del. 1991).

The foregoing is of significance to the instant case because § 1102 explicitly limits the court to two post-review options: (1) The court may do nothing and let the UST's committee choices stand (which it might do if the perceived inadequacy is slight). *See, e.g., In re Gates Engineering,* 104 B.R. 653, 654–55 (Bankr.D.Del.1989). Or (2) the court may enhance representation by ordering the UST to appoint one or more additional committees (which it might do when the inadequacy is gross enough to warrant the additional costs associated with such additional committee(s)). The court no longer has the option—as it once did—to change or make a substitution on the UST's chosen committee. *McLean,* 70 B.R. at 860.[9] In this way, the UST does come to court with a built-in presumption in its favor, for presumably a judge who disagrees with the UST on the issue of adequate representation will not order an (expensive) additional committee unless he disagrees so strongly that the added costs seem justified. In practice, then, § 1102 *de novo* review functions like a quasi-abuse of discretion standard of review, since the prescribed remedy discourages the bankruptcy court from second guessing the UST in close cases.

This interpretation of § 1102 can be supported on two grounds. First, the 1986 revisions sought to eliminate the appearance of favoritism that was said to arise under the 1978 Code when courts in non-pilot districts made administrative appointments and,

thereafter, adjudicated disputes involving the appointees. The UST argues that to permit the bankruptcy judge to review *de novo* and specifically modify creditors' committees would defeat this particular aim of the nationwide expansion of the UST program by giving the judges virtually the same role they had before 1986 in any case where there is a dispute as to representation. The Court agrees on this point.

A second supporting rationale for a construction of § 1102 that limits the court's post-review options stems from the adage *inclusio unius est exclusio alterius.* That is, under the express terms of § 1102(a)(2), the reviewing court has but one remedial option—to order appointment of one or more additional committees. Counter to this, the appellees argue that the greater power to appoint additional committees should be read to include the lesser power to modify an existing committee. Certainly one can imagine instances where these two ways of construing a statute might be in equipoise. This is not such a case. Repeal by Congress, in 1986, of the express power to do what the appellees say is now implied militates in favor of an *inclusio unius* construction. To affirm the bankruptcy court on this issue would effectively negate a deliberate decision by Congress to redraft—and change the meaning of—§ 1102 of the Code.[10]

An *exclusio unius* construction of § 1102 is supported further by the fact that, in the pilot districts in which USTs operated prior to 1986, the UST acted under what was then 11 U.S.C. § 151102 (1978), which was re-

---

**9.** Indeed, even when ordering the appointment of additional committees, a court acting under § 1102(a)(2) may not order that particular creditors be appointed to such additional committees. 5 Collier on Bankruptcy at ¶ 1102.01[4].

**10.** Even if the Court were less persuaded on the point made in text, it is far from clear that the power to appoint a new committee is a greater power encompassing the lesser power to order that certain parties shall serve on an existing committee. Given that the power to order additional committees does not include the power to select the creditors who will serve on those additional committees, the power to order additional committees and the power to name members of an existing committee are as apples to oranges.

One court has, however, suggested that the power to order the appointment of additional committees "presumably" includes the lesser power to order the UST to expand an existing committee—i.e., without specifying which creditors shall be added. *In re First RepublicBank Corporation,* 95 B.R. 58, 59 (Bankr.N.D.Tex. 1988); *see also, Public Service Company,* 89 B.R. at 1021. While this limitation would rehabilitate the greater-includes-lesser argument, the Court doubts that it would improve it enough to counter the force of the *exclusio unius* argument in this context. In any case, such a "lesser included" remedy—if such it be—is not applicable to the facts of this case, given that the bankruptcy court specifically ordered that Firstar and First Bank shall serve on the VMI committee as full members.

pealed in 1986 and reenacted verbatim as 11 U.S.C. § 1102 (1986). *See, Gates,* 104 B.R. at 654. Thus, at the very same time that courts in non-pilot districts had the authority to modify existing committees, "the U.S. Trustee [in pilot districts] appointed all committees under subsection (a) and there was no subsection (c) ... authoriz[ing] the court to change that membership." *Id.* Thus, 11 U.S.C. § 1102(c) (1978) was right under Congress' collective nose when they replaced it with the new § 1102 in 1986, and the Court is satisfied that Congress deliberately and purposefully jettisoned subsection (c) at that time.

In sum, there is nothing in the statute, legislative history or bankruptcy rules to support the view that the mere existence of a "judicial" dispute as to adequate representation permits the reviewing judge to act as if § 1102(c) had not been repealed. Congress decided to limit the bankruptcy courts' *de novo* oversight of the committee selection process to a remedial option—albeit an expensive one—that checks the discretion of the UST without giving the judge a role in deciding who exactly will serve on creditors' committee(s) or encouraging the judge to second guess the UST in cases where disagreement is slight.

It may be that the curtailment of the bankruptcy courts' remedial options under § 1102 was a non-optimal policy choice. As one court has wondered aloud of § 1102, "[p]erhaps [Congress] should change the statute, perhaps the costs [of additional committees] could be ameliorated, or perhaps Congress contemplated relief under other [sections of the] statute[ ]." *Drexel Burnham,* 118 B.R. at 211. But to affirm the bankruptcy court on its reading of § 1102 and approve the cases cited by the indenture trustees would be to substitute the bankruptcy judges' policy choice for that of Congress. This the Court declines to do. Accordingly, the Court holds that while the bankruptcy judge did have authority under § 1102 to review the UST's actions *de novo,* it did not have the authority—under that standard of review—to modify the composition or voting privileges of the VMI creditors' committee empaneled by the UST.

**B.**

■ The foregoing assumes that, notwithstanding the dispute as to his committee choices and the invocation of *de novo* judicial review under § 1102, the UST did act within the discretion that § 1102 gives him to choose creditors' committees. The Court now turns to the second issue on the appeal, whether the court may review the UST's decisions under an abuse of discretion or "arbitrary and capricious" standard of review. *See, In re America West Airlines,* 142 B.R. 901, 902 (Bankr.D.Ariz.1992) ("The standard in determining whether the United States Trustee has abused his authority is whether [he] has acted arbitrarily and capriciously."). This inquiry implicates the bankruptcy court's authority under § 105(a) to "issue any order ... that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As discussed below, the bankruptcy judge may invoke § 105(a) and generally do as he sees fit to ensure that the UST does not abuse his discretion in performing the tasks entrusted to him by the Code.

The 1986 amendments to the Code added § 105(a) in order to give bankruptcy judges explicit authority to prevent abuse and otherwise control the cases before them. The parties agree that § 105 of the Code gives the court a generalized power, constrained only by other provisions of Chapter 11. The parties agree further that § 105 gives the court power to review the UST's actions under an abuse of discretion standard of review, presumably on the rationale that the provisions of the chapter cannot be carried out if the UST abuses the discretion that the chapter gives him. The Court agrees with this interpretation of § 105, which is amply supported by authority. *See, e.g., First RepublicBank,* 95 B.R. at 60; *In re Plabell Rubber Products,* 140 B.R. 179 (Bankr. N.D.Ohio 1992). It is clear moreover that review of the UST under § 105(a)—unlike review under § 1102—need not be invoked by a party in interest. Nor does § 105 limit the court's choice to one remedial option. Thus, in the instant case, upon finding that the UST acted arbitrarily and capriciously in refusing to appoint the indenture trustees as

full members of the VMI creditors' committee, the bankruptcy court was free to issue any order necessary or appropriate to rectify the situation, including an order mandating appointment of the indenture trustees as full voting members of the (single) committee empaneled by the UST.

In summary, the 1986 amendments to § 1102 took away the power bankruptcy judges formerly had under that section to decide *de novo* which creditors shall serve on statutory committees. In cases where the UST has acted within his discretion in making the appointment, bankruptcy judges should not plunge back into the choosing business merely because a disagreement has created a "judicial" dispute. Congress gave the bankruptcy court power to order the UST to appoint further committees to remedy substandard representation, if the court sees fit to do so, and that is the only remedy available under § 1102. If, however, the UST may fairly be said to have abused the discretion given him by the Code, the bankruptcy judge may invoke § 105(a) and—if necessary or appropriate—may dictate which creditors will sit on the committee(s) empaneled by the UST.

**C.**

■ The final question in this appeal is whether the bankruptcy court correctly found that the refusal of the UST to appoint the indenture trustees to the committee in this case was arbitrary and capricious. This is a finding of fact which this Court will overturn only if clearly erroneous. Fed. R.Bankr.P. 8013. For the following reasons, the Court finds no clear error and therefore affirms the bankruptcy court.

The UST articulates two policy reasons why indenture trustees should not serve on an unsecured creditors' committee. First, the UST opines that indenture trustees do not have a "direct" claim on the debtor and that this is a valid reason to exclude them from creditors' committees. Secondly, the UST argues that indenture trustees' fiduciary duties to their bondholders may conflict with the fiduciary duty assumed by committee members to serve the interests of all unsecured creditors. For these reasons, the UST apparently has—and wishes this Court

to approve—a per se policy against the appointment of indenture trustees to creditors' committees. The bankruptcy court, on the other hand, seemed to espouse a per se rule in favor of what it termed indenture trustees' "perfect right to serve" on such committees. This Court approves neither position, but on the facts of this case, the Court has little difficulty concluding that the bankruptcy judge did not commit clear error in finding that the UST's exclusion of the indenture trustees from the statutory committee was an abuse of discretion.

**1.**

■ This Court is of the view that neither United States Trustees nor bankruptcy courts should adopt per se rules in favor of or against the appointment of indenture trustees to creditors' committees. Depending on the circumstances of the individual case, the appointment of indenture trustees to creditor committees may or may not be well advised, and rarely if ever will the issue be clear cut.

On the one hand, indenture trustees serving on creditors' committees have been criticized for being "weak partners," hamstrung by other loyalties, prohibited from voting the claims they represent, and whose agreement on a plan of reorganization is of less utility than that of actual creditors—since it is the latter who must vote on the plan. Daniel J. Bussel, "Coalition–Building Through Bankruptcy Creditors' Committees," 43 *U.C.L.A. L.Rev.* 1547, 1613–14 (1996). Speaking more generally, other commentators have suggested that business persons with a direct economic stake in the case are best suited to make economic decisions and less likely to shilly-shally in an effort to run up fees. Klee and Shaffer, 44 *S.C.L.Rev.* at 1066.

On the other hand, indenture trustees bring prestige and neutrality to the committee table, often fostering the consensus-building process. *See,* Bussel, 43 *U.C.L.A.L.Rev.* at 1613. And as professional fiduciaries for all bondholders, they may better represent the interests of small to medium-sized bondholders than will the large bondholders who are likely candidates for service on statutory committees. *Id.* Permitting indenture

trustees to serve on committees may also bolster the confidence of holders of unsecured debt in Chapter 11 cases, rendering such holders less likely to sell at unduly depressed prices to those who speculate in the debt instruments of bankrupt companies—or ameliorating the losses of those who do sell.[11]

The issue is thus a difficult one. Nevertheless, it seems clear that the indenture trustees provide needed representation of bondholders, especially in cases where no individual bondholders express willingness to serve on a creditors' committee. This need would seem particularly acute in cases where the bondholders' aggregate claims dwarf those of other unsecured creditors. Still another germane factor is the degree to which the beneficial owners of public bond debt are widely dispersed (and afflicted with collective action problems). Each of these factors applies to the present case: there are no holders willing to serve on a committee, their claim volume is very large relative to other creditors, and the beneficial holders are scattered far and wide. The Court thus finds that the indenture trustees were and are likely to be the bondholders' only voice in the VMI reorganization process, militating in favor of their presence on the committee.

Similar to the foregoing, the UST's second stated rationale for not appointing indenture trustees to the committee—namely the potential for conflicts—is a complicated issue. It is true that indenture trustees serving on creditors' committees have been viewed as having dual "fiduciary" duties which may theoretically conflict. *See, Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 268–69, 61 S.Ct. 493, 497–98, 85 L.Ed. 820 (1941). It is by no means clear, however, that this fact should automatically disqualify indenture

trustees from service on today's statutory creditors' committees.[12] Indeed, it has been argued that the fiduciary principle is a relic from the pre-Code era "protective" committees—which tended to be self-appointed and, among other things, often controlled proxies for other creditors—and that the principle retains little vitality in the context of today's statutory committees. *See,* Bussel, 43 *U.C.L.A.L.Rev.* at 1562–65.

One court has addressed the issue of theoretical conflicts in this context by stressing that *all* creditors serving on Chapter 11 committees have conflicts with each other, since absent a 100% distribution, the reduction of any unsecured claim(s) will benefit all others. *In re Microboard Processing, Inc.,* 95 B.R. 283, 285 (Bankr.D.Conn.1989). In the present case, the indenture trustees will represent the bondholders in much the same manner as a trade creditor would represent other trade creditors. Even assuming that an indenture trustee will feel obliged to serve the interests of their bondholders—and perhaps deviate to some degree from their theoretical duty to other members of the committee and other types of creditors—so too will other committee members have their own interest (and those of other creditors of their type) in the back of their minds as the committee negotiates and reaches consensus. This is exactly what statutory committee members expect of each other, and such conduct on the part of indenture trustees cannot be said to warrant their categorical exclusion. *Accord,* Bussel, 43 *U.C.L.A. L.Rev.* at 1590 n. 178 ("This 'conflict' [due to indenture trustees' dual fiduciary obligations] is a false one."); Klee and Shaffer, 44 *S.C. L.Rev.* at 1012 ("courts generally . . . ignore speculative or contingent conflicts and concern themselves only with actual ones instead").

---

**11.** Such investors often have an informational advantage over smaller holders, rendering the latter less able to make an informed decision whether to sell and more likely to accept low-ball bids for their bonds. *See,* Suniati Yap, "Investing In Chapter 11 Companies, Vultures or White Knights?," 2 *Sw.J.L. Trade Am.* 153, 161 (1995). While it is an open question whether investors in distressed securities help or hinder the reorganization process, it is undeniable that they profit at the expense of the little guy, a state of affairs which strikes many as unfair. *See, id.*

**12.** As Justice Frankfurter stated in a pre-Code reorganization case, "to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?" *SEC v. Chenery Corp.,* 318 U.S. 80, 85–86, 63 S.Ct. 454, 458–59, 87 L.Ed. 626 (1943).

If and when an actual impermissible conflict arises in the course of a Chapter 11 case, it can be brought to the attention of the court, which may remedy the problem by appropriate order, pursuant to 11 U.S.C. § 105(a). *See, In re The Charter Company,* 42 B.R. 251, 252 (Bankr.M.D.Fla.1984). The law is not well-developed as to what constitutes such an impermissible conflict, but the Court is satisfied that indenture trustee status without more does not constitute such a conflict. That there appears to be no reported case in which a bondholder has sued an indenture trustee for breach of duty merely for serving on a creditors' committee tends to support this view. In these circumstances, the Court is inclined to view the problem of potential conflict as a matter between the indenture trustees and their respective bondholders. *See, id.,* 42 B.R. at 254.

In sum, the answer to the question whether to appoint indenture trustees to creditors' committees may vary depending on the facts and circumstances of the individual case. The inquiry should be informed by a number of factors, and per se rules in favor of or against such appointments are clearly inappropriate. In the present circumstances, this court cannot say that the bankruptcy court clearly erred in finding the UST's exclusion of the indenture trustees from full committee membership arbitrary and capricious.

**2.**

■ While there is no universally applicable policy rationale for or against allowing indenture trustees to serve on creditors' committees, it bears emphasis that the express provisions of the Code do appear to permit the appointment of indenture trustees to creditor committees. For while the indenture trustees' claims are indirect and representative of other claims, the definition of "creditor" in the Code is a broad one which contains no requirement of "directness." *See,* 11 U.S.C.A. § 101(10) (" 'creditor' means [an] entity that has a claim against the debtor ...") and § 101(15) (" 'entity' includes person, estate, trust, governmental unit, and United States trustee").

To be a creditor, the indenture trustee must first be an "entity" under § 101(15).

As a first cut, the use of the word "includes"—and not "means" as is used in most other § 101 definitions—suggests that the list of examples provided in § 101(15) is non-exclusive. Secondly, for much the same reason, the indenture trustee may well be a "person." *See,* 11 U.S.C. § 101(41) (" 'person' *includes* person, individual or corporation, [but with one exclusion not relevant here]"). Third, even if an indenture trustee is not a "person", it may still qualify as an entity under § 101(15) in that it acts on behalf of a "trust." While the latter possibility is not free from doubt, at least one court has expressly held that an indenture is a "trust" within the meaning of § 101. *See Charter,* 42 B.R. at 252. And a trust—which is a legal fiction—can act only through its trustee(s). For this reason, the *Charter* court was persuaded that an indenture trustee acting pursuant to an indenture agreement is within the Chapter 11 definition of an "entity". *Id.*

To be a "creditor" an indenture trustee must also have a claim against the debtor. In the *Charter* case, the court found that the indenture trustee in that case did have a claim within the meaning of § 1102. *Id.* There as here, it was undeniable that such claims were representative of other claims. But again, no requirement of directness appears in the Code. It was apparently of no moment to the *Charter* court that the bonds forming the basis of such claims belonged to the bondholders—rather than the entities asserting the claim—or that the bondholders could themselves have asserted claims. *See, id.* at 253 (*citing In re Altair Airlines, Inc., Appeal of Air Line Pilots Association International,* 727 F.2d 88 (3d Cir.1984)).

While this Court is not prepared to hold that the open-ended definition of "creditor" found in § 101 means that the UST may never properly exclude indenture trustees from service on creditors' committees, the court is satisfied that the circumstances of this case warrant the inclusion of the indenture trustees on the committee as full members. Significantly, the UST made no showing before the bankruptcy court that this case is extraordinary in any sense that might justify a departure from the specifications set

forth in § 1102(b)(1).[13] Accordingly, this Court sees no clear error in the bankruptcy court's finding that the exclusion of the two largest "creditors" of VMI from voting membership on said committee was arbitrary and capricious. To the contrary, as noted above, the aggregate claim volume of the bondholders, as well as their number and geographical dispersion, all militate in favor of labelling their duly authorized representatives "creditors" under 11 U.S.C. §§ 101 and 1102. The Court thus affirms the bankruptcy court's finding that UST's decision to exclude the indenture trustees from voting membership on the committee was arbitrary and capricious.

### III. Conclusion

Once the matter was raised, the Bankruptcy Court had the authority to review *de novo* the decision of the United States Trustee to exclude both indenture trustees from full membership on the unsecured creditors' committee of VMI. Upon finding the representation of said committee inadequate, however, the Bankruptcy Court erred in concluding that it had the authority under § 1102 to order the appointment of the indenture trustees to that committee. Nevertheless, the court's finding that the United States Trustee acted arbitrarily and capriciously was not clearly erroneous, and the court was correct in its alternative holding that such a finding permitted it to order that the indenture trustees shall serve as voting members of said committee.

**NOW, THEREFORE, BASED ON THE FOREGOING:**

**The decision and order of the Bankruptcy Court is AFFIRMED on the grounds stated.**

**SO ORDERED.**

---

**13.** § 1102(b)(1) provides that "a committee of creditors appointed under [§ 1102(a)] shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor, of the kinds represented on such committee...."